234 So.2d 386 (1970)
BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Appellant,
v.
W.H. FORNALSKI, As Father and Natural Guardian of Wanda Fornalski, a Minor, Appellee.
No. 69-198.
District Court of Appeal of Florida, Fourth District.
April 10, 1970.
Rehearing Denied May 21, 1970.
John W. Thornton, of Stephens, Demos, Magill & Thornton, Miami, for appellant.
Arthur B. Parkhurst, of Parkhurst, Hayes & LaHurd, Fort Lauderdale, for appellee.
OWEN, Judge.
Seventeen-year old Wanda Fornalski sustained bodily injury while on the premises of a neighbor, Akers. Wanda's father sought recovery of medical expenses under the medical payments coverage of the Akers' homeowner's insurance policy. The non-jury trial having resulted in a judgment in favor of Mr. Fornalski, the insurer brings this appeal.
The material portions of the policy provision relating to coverage for medical payments is set forth in the margin.[1] Appellant's defense in the trial court was, and its contention in this court is, that the medical payments coverage did not apply to the bodily injury sustained by Wanda for two *387 reasons: (1) the bodily injury which Wanda sustained was not caused by accident; and (2) at the time Wanda sustained the bodily injuries she was on the premises without the permission of an Insured.
The material facts stated most favorably to the plaintiff are as follows: Mr. Fornalski resided with his wife and daughter Wanda in a residential neighborhood in Plantation, Florida. Don Waldron, a friend of Wanda's lived across the street. The Akers family lived adjacent to the Waldrons. On September 17, 1967, one Geraldine (Gerry) Johanscik, a girl friend of Don Waldron, had been reported missing. Wanda attended a party on the evening of September 17 at the home of a friend of Gerry's at which time Wanda learned that Gerry was missing. Wanda left the party near midnight. When she arrived at home Wanda and her mother talked about the fact that Gerry was missing. Upon looking out the window, Wanda observed a group of ten to fifteen boys gathered in the street. In the meantime, Don Waldron was looking around his house for Gerry. As he entered the garage, the door of the utility room opened and Gerry ran out. Seeing this from the window, Wanda exclaimed, "There is Gerry", and ran out of the house and across the street. Wanda grabbed Gerry's hand in which she held a knife, causing Gerry to say to Wanda, "If you don't leave me alone * * * I am going to kill Don, he needs to be killed. If you don't leave me alone, I am going to stab you." However, Wanda continued to hold onto Gerry, the two struggling or tussling together. This melee continued down the sidewalk and over onto the lawn of the home owned by the Akers family, where Wanda was stabbed by Gerry and fell down on the Akers' lawn.
There was no proof of any expressed permission on the part of Akers for Wanda to be on the Akers' premises at the time of her injury. The issue is thus narrowed as to whether there was any proof of implied permission.
Permission to come upon one's premises may be implied from custom, usage or conduct. Prior v. White, 1938, 132 Fla. 1, 180 So. 347. Such implied consent is necessarily limited, however, to those acts that are within a fair and reasonable interpretation of the terms of the grant. 32 Fla. Jur., Trespass, § 9.
The evidence relative to custom, usage or conduct from which it might be implied that Wanda had permission to come upon the Akers' premises was extremely limited. On one occasion some months before the injury, Wanda had spoken to Mrs. Akers while the latter was standing in her yard. Occasionally, Wanda's younger sister visited one of the Akers' children. From time to time younger children in the neighborhood, in the course of their daytime play, came into the Akers' yard. The neighborhood was a typical suburban residential area.
It is conceivable that this evidence would sustain an inference of implied permission for Wanda to come upon the Akers' premises at reasonable times for some normal and proper purpose, such as having a social visit with Mrs. Akers or retrieving a younger sister for mealtime. It would not be inconceivable to infer that neighborliness customary in such a residential area would imply permission to come upon the premises in the middle of the night to seek assistance of an emergency nature. But there is no evidence here that Wanda went on the Akers' premises at 12:30 in the morning to seek emergency assistance or to conduct any of those social amenities which might be said to be customary in a suburban residential neighborhood. The evidence is clear that Wanda became engaged in a tussle with Gerry on or in front of the Waldron property, and that as the two of them continued the scuffling and tussling on the sidewalk they moved fortuitously in the direction of and onto the Akers' premises where the stabbing occurred. There is not a scintilla of evidence of any custom or usage in the neighborhood, or prior conduct *388 on the part of Akers, from which it could be lawfully inferred that teenagers engaged in scuffling and tussling on the sidewalk in front of the property at 12:30 in the morning have the property owner's implied consent or permission to come upon the property to conduct such activities.
At the time Wanda sustained bodily injury she was on the Akers' premises without the permission required under the policy and consequently by its clear and unambiguous terms, the medical payments coverage did not apply to her. Having reached this conclusion it is unnecessary for us to pass upon the question of whether the bodily injury which Wanda sustained was caused by accident.
The final judgment entered in favor of the plaintiff is reversed and the cause remanded with instructions to enter final judgment in favor of the defendant.
Reversed and remanded with directions.
TJOFLAT, GERALD BARD, Associate Judge, concurs.
CROSS, C.J., concurs specially, with opinion.
CROSS, Chief Judge, concurring specially:
I find myself able only to agree with the conclusion reached by the majority. I am impelled to set forth the reasoning which I believe to be of sturdier stock.
In order to reach the conclusion through the reasoning of the majority, one would have to make a determination that Wanda Fornalski was in fact a trespasser upon the premises owned by the Akers. I do not believe one could consider Wanda to have trespassed the real property under the recognized definition of trespass and cases relating to this act. I am convinced that the record reveals sufficient evidence to sustain an inference of implied permission for Wanda to come upon the Akers' premises.
I therefore must turn to what I consider to be "firmer footing" to show by the plain terms of the contract the insurer was not liable to pay personal medical payments for the injury sustained by Wanda. Coverage F of the homeowners policy reads as follows:
"COVERAGE F  PERSONAL MEDICAL PAYMENTS: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury caused by accident,

"(a) while on the premises with the permission of an Insured, or
"(b) while elsewhere if such bodily injury, (1) arises out of the premises or a condition in the ways immediately adjoining, (2) is caused by the activities of an Insured, (3) is caused by the activities of or is sustained by a residence employee and arises out of and in the course of his employment by an Insured, or (4) is caused by an animal owned by or in the care of an Insured." (Emphasis added.)
Since Coverage F concerns itself with bodily injuries caused by accident, the basic determination that must be made prior to determining whether Wanda was on the premises with the permission of the insured was to determine whether the injuries of Wanda Fornalski were sustained solely through accident. It is therefore of obvious necessity to seek the meaning of the word "accident" as used in the policy. Etymologically, the word "accident" is derived from the Latin verb "accidere" which is literally interpreted as "to befall," and this means a happening. It has, however, acquired the meaning of a happening or an event out of the usual order of things, or not reasonably to be anticipated.[1] The definitions *389 alluded to are not to be taken so literally that an event which is natural and usual can be regarded as an accident if actually unexpected. Rather, the definitions are to be taken as meaning that the event is such as would not reasonably be anticipated by a person situated as was the one to whom the event occurred whether he actually had anticipated it or not. This is in accordance with the presumption that a person intends the natural, probable consequences of his acts, and accordingly, if his consequences are natural and probable, he will not be heard to say that he did not intend them. In this view, any occurrence which naturally and properly results from a situation in which a person voluntarily places himself under such circumstances that he can foresee or will be presumed to foresee the result must be held to be expected by him and is not therefore in any proper sense an accident. Taliaferro v. Travelers' Protective Association of America, 8 Cir.1897, 80 F. 368.
The circumstances and the facts presented to the court prove that Wanda received her injuries at the hands of Gerry, whose threatened object was to stab her and who intentionally inflicted the injuries upon Wanda. It is uncontroverted that when Wanda ran across the street toward Gerry and the melee ensued, Gerry said to Wanda, "If you don't leave me alone, I'm going to kill Don. He needs to be killed. If you don't leave me alone, I'm going to stab you." Thus, Wanda voluntarily put herself in the position where she could or should have foreseen that a stabbing would take place. She must have known that a natural and probable result of the affray and the threats of Gerry would be the stabbing of herself. Knowing the risk, she apparently intended to assume it, since she made no effort to extricate herself. The injuries therefore were not caused by accident, and thus by the plain terms of the insurance contract the insurer-defendant is not liable to pay personal medical payments for injuries which were not caused by accident. This, in my opinion, is the only substantial basis for reversing the trial court's determination.
NOTES
[1] "COVERAGE F  PERSONAL MEDICAL PAYMENTS: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury caused by accident,

"(a) while on the premises with the permission of an Insured. * * *"
[1] Webster's Dictionary defines it as "an event that takes place without one's foresight or expectation, and an event which proceeds from an unknown cause or is an unknown effect or unknown cause and therefore not expected."

Black's Law Dictionary defines the word as, "[A] fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen, or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenominal, taking place not according to the usual course of things or events, out of the range of ordinary calculations * * *."