**STATE v. BLOCKER.**
No. C 117-133.
County Court, Dade County.
September 12, 1973.

Richard E. Gerstein, State Attorney, C. E. Rennella, Assistant State Attorney, for the state.

Talbot D'Alemberte of McCarthy, Steel, Hector & Davis, for the defendant.

## C. P. RUBIERA, Judge.

This cause having come before the court on the defendant's motion to dismiss this cause on grounds that the undisputed facts do not establish a prima facie case of guilt against the defendant and the court having considered the traverse filed by the state attorney and, having read the documents on file, seen the film of the event, heard a tape recording of a post-incident phone conversation in which the defendant participated and, having heard argument of counsel, the court is duly advised in the premises and is prepared to rule.

### Statement of the facts

The defendant is a television news journalist employed by CBS News as a special correspondent. At the time of the incidents complained of in this case, he was conducting an investigation of the break-in of the Chilean embassy which had been the object of national attention. In connection with this investigation he sought to interview Pablo Fernandez, who, he was told, lived at 7750 S. W. 18th Terrace in Miami. Pablo Fernandez has a father, also named Pablo Fernandez, who lives at this address.

The defendant, accompanied by a Spanish language interpreter, Miss Raquel Moran, went to 7750 S. W. 18th Terrace, and they approached the house, went up the paved walk and the front steps and knocked on the door. Miss Moran's affidavit reflects that he spoke in English to her during this time. When the man who answered the request for Pablo Fernandez closed the door without permitting an interview, the defendant thereupon went back to the street where a TV camera crew was located and then returned to the door, joining the interpreter. Both counsel are agreed that the man who came to the door was Pablo Fernandez, Sr.

The defendant again knocked on the door and attempted to get an interview from the man who identified himself as Pablo Fernandez.

Pablo Fernandez, Sr. then came out of the house and went to the defendant's car to take the license number. According to the affidavit of Miss Moran, the film shown to the court shows all events from the time that Pablo Fernandez, Sr. came out of his house until Mr. Blocker and Miss Moran left the scene.

The court, having seen that film, notes that there is continuity of action in the film and that there is no indication of any editing. It shows Mr. Fernandez, a man somewhat larger than Mr. Blocker, emerging from the house and proceeding to the rear of a blue automobile where he takes down a license number. It does not show any physical contact between Mr. Blocker and Mr. Fernandez, and it does not show Mr. Blocker making any threatening gestures or shouting. No crowd appears in this film.

Thus, although there are disputes as to certain facts and counsel have placed two versions before the court, the perameter of the testimony is rather narrow. Mr. Fernandez's version is contradicted by Miss Moran's version and the film supports Miss Moran. The recording of the defendant's phone conversation which occurred after the incident tends to support Miss Moran's story also.

Taking either version or both versions together, the court finds that the undisputed facts demonstrate that there was undoubtedly some dispute between Mr. Fernandez who did not want to be interviewed and Mr. Blocker who wanted to interview him. To consider the extent that this dispute involved possible criminal activity requires an examination of the legal principles which govern this case.

### Discussion of legal authorities

The state does not contend that Pablo Fernandez was injured, that there was any property destroyed or that Joel Blocker even cursed at him. Joel Blocker did approach Mr. Fernandez's house, go on to his property and knock on the door, but this activity was not extraordinary and is permitted by custom. See Prior v. White, 132 Fla. 1, 180 So. 347, 356 (1938).

If Mr. Fernandez did not want to play any role in this investigation that was his right but even an unwilling citizen is, at times, brought into the collection and dissemination of news. See Jacova v. Southern Radio and Television Co., 83 So.2d 34 (Fla. 1955), where a person not involved with gambling activity was at the scene of a gambling raid and had his picture taken and broadcast in a news show. The Florida Supreme Court, in deciding that no civil action for invasion of privacy existed in such circumstances, cited Ross v. Gore, 48 So.2d 412, 415 (Fla. 1955), and quoted from it as follows —

"The public has an interest in the free dissemination of news. This interest was well stated by that great American, Thomas Jefferson, in the following words: 'The only security of all is in a free press. The force of public opinion cannot be resisted, when permitted freely to be expressed. The agitation it produces must be submitted to. It is necessary to keep the waters pure. *No government ought to be without censors: and where the press is free no one ever will.'* " (Court's emphasis.)

If no civil liability lies for the reasonable collection and dissemination of news, it is obvious that criminal sanctions will not be imposed and the threat of criminal sanctions should not be allowed to "chill" the newsman's right to collect and disseminate news so long as those rights are exercised within permissible bounds.

If the undisputed facts show that the defendant was acting within his legal rights to pursue a news story, this court has a duty to dismiss this case at this time so that this action, instituted by a private citizen, can no longer pose a threat to the rights of the press.

The question remains — was this activity of this defendant of such a nature as to take it beyond the conduct society would expect of a tenacious reporter and into the category of disorderly conduct for which the sanctions of criminal law should be imposed? This court concludes that it did not.

Taking the facts favorable to the state, the court is persuaded that this activity might be characterized as a rhubarb or a "tempest in a teapot" similar to that involved in In re Fuller, 255 So.2d 1 (Fla. 1971). In that case there was an "angry altercation" and possibly some crude words uttered by the defendant during an ugly scene lasting less than ten minutes. In that case the action resulted from a petition filed in juvenile court, and in this case it stems from a complaint filed by a private citizen. In neither case did the authorities who were closest to the scene — the school authorities in *Fuller*, police authorities in this case — deem the matter of sufficient interest to institute criminal action.

In the *Fuller* case the court concluded that the conduct "did not fall within the sanctions of the statute", 255 So.2d at 4. The *Fuller* case cannot be distinguished.

### Conclusion

Thus, the court does not find it necessary to reach the defendant's assertions that the disorderly conduct statute, Florida Statute 877.03, is unconstitutional for it can and does apply the principles

140

of In re Fuller, supra, to hold that the facts of the case do not allow application of criminal sanctions.

Therefore, the court grants the defendant's motion to dismiss filed in this cause.