319 So.2d 100 (1975)
Klenna Ann FLETCHER, a/K/a Kay Fletcher, Appellant,
v.
FLORIDA PUBLISHING COMPANY, a Florida Corporation, Appellee.
No. V-101.
District Court of Appeal of Florida, First District.
September 10, 1975.
Rehearing Denied October 22, 1975.
*103 Ellis E. Neder, Jr., and Rudolph J. Inman, Jr., Jacksonville, for appellant.
Harold B. Wahl of Loftin & Wahl, Jacksonville, for appellee.
BOYER, Chief Judge.
While appellant was absent from the State her home located in Jacksonville was severely damaged by fire. After the fire was extinguished the fire marshal and a police sergeant entered the residence accompanied by various representatives of the news media including a photographer employee of appellee. The body of appellant's seventeen-year-old daughter, clad only in underclothing, was discovered on the floor of a second-story bedroom. When the body was removed a silhouette remained on the bedroom floor. The officials, having exhausted their supply of film, requested appellee's photographer to make a picture of the silhouette, such being important to their investigation as it allegedly demonstrated that the child was on the floor of the bedroom prior to the fire. Other photographs were taken, some of which (together with the silhouette picture) were delivered to the authorities to be made a part of their official file. The photographs were also delivered to appellee who published in its newspaper an account of the fire together with several of the photographs including the silhouette of the child's body. Beneath the silhouette picture in large type appeared the words "Silhouette of death". Appellant first learned the facts surrounding the tragic death of her daughter by reading the story and viewing the photographs published by the appellee.
Appellant's amended complaint was in three counts. The first count alleged trespass and invasion of privacy; the second count alleged invasion of privacy without reference to trespass and the third count was for the wrongful intentional infliction of emotional distress, seeking punitive damages.
The learned trial judge, upon appropriate pleadings, dismissed Count II of the complaint with prejudice and granted a summary final judgment in favor of the defendant (appellee here) on Counts I and III. This appeal followed.
We will here treat each count separately and will recite such other facts as are gleaned from the record as may be found to be material to the specific point being considered.
*104 The trial court, in its order granting the motion for summary judgment as to Count I, found that "as a matter of law an entry, that may otherwise be an actionable trespass, becomes lawful and non-actionable when it is done under common usage, custom and practice" and that "it is common usage, custom and practice for news media to enter private premises and homes to report on matters of public interest or a public event." Those findings were based upon numerous affidavits filed by the defendant in support of its motion for summary judgment.
Historically, trespass has its roots in the criminal law. However, as the law developed it became also recognized as a tort, compensible in damages.[1] Thus, at common law, every entry upon the land of another, except by consent, was a trespass for which satisfaction in damages would lie.[2] There is now a clear distinction between criminal trespass and civil trespass. Among other things, the burden of proof is different as is the ultimate result upon a determination of guilt. A criminal trespass is an offense against the State or one of its political subdivisions and is punishable as such. On the other hand, one found guilty of a civil trespass responds in damages to the injured party.
In an action for civil trespass the plaintiff is always entitled to at least nominal damages,[3] and all damages of which the act of trespass was the efficient cause and for which the plaintiff is entitled to recover in any form may be recovered in such action although in point of time they did not result until sometime after the act was committed.[4]
Consent is, of course, an absolute defense to an action for trespass provided the consent is given by the possessor of the land or one competent and authorized to give such consent and provided further that the acts of the party accused of the trespass do not exceed, or are not in conflict with, the purposes for which such consent was given.[5]
The defense of common custom and usage is but another way of expressing consent by implication; that is, consent may be implied from custom, usage or conduct.[6] However, consent to an entry on property by a person named cannot be extended by inference to justify the unlicensed entry of others,[7] and while permission to go upon the premises of another may be implied from custom, usage or conduct, such implied consent is necessarily limited to those acts which are within a fair and reasonable interpretation of the terms of the grant.[8] In order for custom and usage to constitute implied consent to a trespass the custom and usage must have been at the acquiescence of the possessor or others similarly situated. As an example, the opening of an office to transact business with the public is a tacit invitation to all persons having business with the *105 proprietor, and a permission to others to enter the place of business. Further, unless a home owner manifests externally in some way his or her wish to remain unmolested by the visits of solicitors seeking orders for merchandise, a solictor may take custom and usage as implied consent to call where such custom and usage exists.[9] In the absence of some external indication to the contrary, custom and usage would render unactionable a trespass on the premises of another for the purpose of a social visit, retrieving young children who had wandered away or to seek the assistance of the possessor at a time of emergency.[10] There are unquestionably other instances in which consent will be implied based on common custom, usage and conduct: The foregoing examples are merely by way of explanation, and are not intended to be exclusive.
Appellee relies heavily upon Prior v. White, supra. However, it is readily apparent that that case has no application to the facts sub judice. There the Supreme Court of Florida had for consideration the constitutionality of a municipal ordinance declaring solicitation "in and upon private residences" a nuisance, constituting a misdemeanor punishable by fine or imprisonment. The Supreme Court there simply held that such solicitation was not a nuisance, either private or public, and that it did not have any relation to the public health, safety, or general welfare of the community, (a requisite basis for assertion of the police power) emphasizing that "where the householder permits solicitors, the city cannot forbid." Quoting 2 Cooley on Torts, 4th Ed., page 238, § 248, the Court said:
"`Every retail dealer impliedly invites the public to enter his shop for the examination of his goods, that they may purchase them if they see fit; the mechanic extends the like invitation to those who may have occasion to become his customers; the physician and the lawyer invite them to their respective offices, and so on * * * No doubt one may visit another's place of business from no other motive than curiosity, without incurring liability, unless he is warned away by placard or otherwise. So every man, by implication, invites others to come to his house as they may have proper occasion, either of business, or courtesy, for information, etc. Custom must determine in these cases what the limit is of the implied invitation." (180 So. 355; emphasis the Court's)
Declaring the offending ordinance unconstitutional the Supreme Court emphasized that the defendant, a Fuller Brush salesman, though going to the home in question without express invitation, remained at the implied invitation of the occupant who placed orders for the merchandise which he was selling. Entry of the home of another without invitation was not an issue in Prior v. White.
Neither is State v. Blocker[11] of any help. First, that opinion is the opinion of a single judge of the County Court of Dade County, and therefore not binding by the doctrine of stare decisis upon this Court. Second, in that case the defendant newsman, who was being prosecuted criminally, did not go into the residence of the prosecuting witness. The holding of that opinion is summed up in the second sentence thereof: "Joel Blocker did approach Mr. Fernandez's house, go on to his property and knock on the door, but this activity was not extraordinary and is permitted by custom. See Prior v. White, 132 Fla. 1, 180 So. 347, 356 (1938)." (39 Fla. Supp. 138) In short, the defendant there went to the front door of the home of the prosecuting witness. He did not go in. Prior *106 v. White, supra, was properly cited as a precedent for the granting of the order of dismissal in that case. Such are not the facts sub judice.
McKee v. Gratz[12] is also distinguishable upon the same basis. That case involves a trespass upon unenclosed land in reliance upon implied consent by custom and usage, not an intrusion into a private dwelling.
In Martin v. Struthers,[13] the United States Supreme Court had occasion to consider an ordinance, similar to the ordinance involved in Prior v. White, supra. There the appellant was convicted in the Mayor's Court and fined for violating an ordinance which declared it unlawful for any person to distribute handbills, circulars or other advertisements, to ring the doorbell, sound the door knocker, or otherwise summon the inmate or inmates of any residence to the door for the purpose of receiving such handbills, circulars or other advertisements. Holding that the ordinance was violative of the Federal Constitution's guarantee of free speech and the press the Supreme Court said:
"* * * Whether such visiting shall be permitted has in general been deemed to depend upon the will of the individual master of each household, and not upon the determination of the community. In the instant case, the City of Struthers, Ohio, has attempted to make this decision for all its inhabitants. * * *" (319 U.S. at page 141, 63 S.Ct. at page 862, 87 L.Ed. at page 1316)
Recognizing the distinction between criminal trespass and civil trespass the writer of the opinion further said:
"Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. * * * We know of no state which, as does the Struthers ordinance in effect, makes a person a criminal trespasser if he enters the property of another for an innocent purpose without an explicit command from the owners to stay away. * * *" (87 L.Ed. 1319, 319 U.S. 147, 63 S.Ct. 865)
There is nothing in Martin v. Struthers relating to damages for a civil trespass as distinguished from a fine for criminal trespass. Neither does it involve an entry into a house. It is in every regard very similar to Prior v. White.
Pearson v. Dodd,[14] is cited as authority for appellee's position here. However the facts are readily distinguishable. In that case former employees of Senator Dodd, neither of whom were parties to the suit, with the assistance of two members of his staff, entered his office without authority, removed various documents from his files, made copies of them, replaced the originals and turned over the copies to columnist Jack Anderson who was then associated with columnist Drew Pearson. The defendants Pearson and Anderson thereafter published articles containing information gleaned from those documents. The court emphasized that neither Anderson nor Pearson has trespassed upon Dodd's premises although they were aware that the documents had been removed without authorization. Under those circumstances the court said:
"* * * If we were to hold appellants liable for invasion of privacy on these facts, we would establish the proposition that one who receives information from an intruder, knowing it has been obtained by improper intrusion, is guilty of a tort. In an untried and developing area of tort law, we are not prepared to go so far. * * *" (410 F.2d 705)
*107 The court thereupon concluded:
"* * * Since we have also concluded that appellants' role in obtaining the information did not make them liable to appellee for intrusion, their subsequent publication, itself no invasion of privacy, cannot reach back to render that role tortious." (410 F.2d 706; emphasis added)
It is apparent from the language emphasized in the foregoing quote that had the appellants' role in obtaining the information constituted actionable trespass then the decision would have been contra. Indeed, the court appeared to have anticipated this very case when it said:
"* * * But in analyzing a claimed breach of privacy, injuries from intrusion and injuries from publication should be kept clearly separate. Where there is intrusion, the intruder should generally be liable whatever the content of what he learns. * * *" (410 F.2d 705; emphasis added)
New York Times Co. v. United States,[15] the infamous Pentagon Papers case, has no application at all to the case sub judice. The sole holding of the several separate opinions constituting that case is that publication by a newspaper of information wrongfully obtained will not be enjoined. No such issue is here involved.
Both parties cite Cantrell v. Forest City Publishing Co.[16] In that case a mother and son brought a diversity action against a newspaper publisher, a photographer and a reporter, claiming that a feature story in the newspaper discussing the impact upon their family of the death of their father in a bridge collapse, which story contained several admitted inaccuracies and false statements about the family, entitled them to compensatory and punitive damages under the "false light" theory of invasion of privacy. The United States District Judge entered judgment on the jury's verdict awarding damages and the Court of Appeals reversed. The United States Supreme Court granted certiorari, holding that the evidence was insufficient to support the jury's verdict against the photographer but that the judgment based upon the jury verdicts should have been sustained as to the reporter and publisher. The action was bottomed on the "false light" theory of invasion of privacy and not upon trespass. In that matter it differed from the action sought to be asserted in Count I of the plaintiff's complaint sub judice. The Circuit Court observed that there was little evidence as to whether the reporter and photographer were invited into the plaintiff's home. One of the plaintiff's children testified that one had asked them in and that no one had asked them to get out. He further testified that the door was open "because the men were coming." The court observed:
"On appeal the appellees attempt to treat the entry of the two defendants into their home without an invitation when only children were present as the intrusion for which damages were justified. However, this was not the theory on which the case was tried in the District Court." (484 F.2d 153)
In reversing the judgments the Court of Appeals said:
"* * * The two newsmen may have been guilty of trespass against the property of the Cantrells. However, the gravamen of this action lies in the claim that the publication of the article, not the physical intrusion, damaged the plaintiffs. * * *" (484 F.2d 154-155)
On certiorari, the United States Supreme Court reversed the Court of Appeals as to *108 the reporter and publisher, reinstating the judgments against them. In so doing, it did not disturb those portions of the opinion of the Court of Appeals above quoted but, instead, specifically recited that "the case went to the jury on a so-called `false light' theory of invasion of privacy. In essence, the theory of the case was that by publishing the false feature story about the Cantrells thereby making them the objects of pity and ridicule, the respondents damaged Mrs. Cantrell and her son William * * *".
It is abundantly clear therefore that the Cantrell v. Forest City Publishing Co. decisions have no effect upon a case bottomed on actual trespass.
Cases have been found wherein custom and usage was construed to imply consent to enter onto business property and into business establishments.[17] Cases have also been found wherein custom and usage was construed to imply consent for the entering onto the private residential property of another.[18] However, no case has been cited to us by counsel, nor has independent research revealed any, in which consent by custom and usage was held to have authorized entry into the private dwelling of another.[19]
The law is so well established as to render citations superfluous that "every man's home is his castle". Even the law applicable to searches and seizures incident to the commission of crimes differs as to whether the property involved is a residence or some other type of property.[20]
Sub judice, it is clear that appellant did not either impliedly or expressly invite appellee's employees into her home; nor is there anything in the record to indicate that appellant (nor others like situated) had theretofore acquiesced in other persons coming into her home: Therefore there was no basis for the establishing of an implied consent by custom and usage. Though it is conceded by appellant that the fire marshal and police rightfully entered the premises for the purpose of discharging their official duties, there is nothing to indicate that those officials had, in the absence of an emergency, authority to invite others to do so. The fire had been extinguished prior to the entry complained of. *109 The emergency was over. There is no contention that appellee's employee went into the premises for the purpose of rendering assistance to the occupants nor to the officials. The established fact that photographs were taken by appellee's employee at the request of the authorities after the entry has no effect on the alleged initial trespass which would have occurred when appellee's employee crossed the threshold of appellant's home. Under the authorities above cited, in the light of the affidavits filed by appellee in support of its motion for summary judgment, custom and usage implied consent to go onto the yard of appellant's home and up to the front door: However, the proofs before the trial court were not sufficient to show that there was no genuine issue as to the very material fact as to whether implied consent by custom and usage authorized entry into the premises, without invitation by appellant or someone authorized by her.
While custom and usage are matters of fact which may properly be alleged in affidavits in support of, or in opposition to, motions for summary judgment, the legal effect of such facts are matters of law to be resolved by the courts. As a matter of law the implication of consent by custom and usage to go onto and into business premises, or onto a yard or enclosure surrounding a residence, or onto the entrance of that residence does not extend to an implied consent to proceed into the dwelling place. If custom and usage are to be relied upon as implying consent to enter into a dwelling place, after an emergency has subsided, as distinguished from entering onto a yard or a porch or into a common hallway, then the proofs must relate to that specific point. Affidavits reciting custom and usage as to emergency situations, or as to customary conduct involving exterior portions of a private dwelling may not be extended to include the interior. Said another way, although custom and usage may be relied upon as implying consent to enter into a private dwelling after an emergency has subsided, the proofs of such custom and usage must establish that specific fact, otherwise an issue is presented to be resolved by a trier of fact.
As far back as 1961 this Court recognized the right to recover damages for invasion of privacy in a negligence action.[21] Allowance of such damages as an incident to a trespass is no extension of that doctrine.
Dietemann v. Time, Inc.[22] involves a factual situation so analogous to that sub judice that we feel justified in quoting extensively therefrom. Indeed, to paraphrase rather than to quote would serve only to lengthen this opinion. There the plaintiff, appellee, was engaged in the practice of healing with clay, minerals and herbs for which he made no charges, but did accept donations. Time, Inc. entered into an arrangement with representatives of the District Attorney's office whereby Time's employees would visit Dietemann at his home and obtain facts and pictures concerning his activities. They gained entrance to the plaintiff's home through a ruse, took pictures by use of a secret camera, and carried on conversations which were transmitted by a hidden radio transmitter to a tape recorder in a parked automobile outside occupied by other employees of Time and an investigator of the State Department of Public Health. The plaintiff was thereafter arrested at his home on a charge of practicing medicine without a license, at which time many pictures were made by employees of Time, of plaintiff and his home. Also present were newspapermen who had also been invited by the officials to be present at the time of the arrest. Time, Inc. published a magazine article concerning Dietemann together with various photographs. Suit was filed alleging an invasion of privacy which resulted in a *110 judgment for damages. In affirming the judgment the Court of Appeals said:
"The appeal presents three ultimate issues: (1) Under California law, is a cause of action for invasion of privacy established upon proof that defendant's employees, by subterfuge, gained entrance to the office portion of plaintiff's home wherein they photographed him and electronically recorded and transmitted to third persons his conversation without his consent as a result of which he suffered emotional distress? (2) Does the First Amendment insulate defendant from liability for invasion of privacy because defendant's employees did those acts for the purpose of gathering material for a magazine story and a story was thereafter published utilizing some of the material thus gathered? (3) Were the defendant's employees acting as special agents of the police and, if so, did their acts violate the First, Fourth, and Fourteenth Amendments of the Federal Constitution, thereby subjecting defendant to liability under the Civil Rights Act (42 U.S.C. § 1983)? Because we hold that plaintiff proved a cause of action under California law and that the First Amendment does not insulate the defendant from liability, we do not reach the third issue. (449 F.2d at page 247)
* * * * * *
"In jurisdictions other than California in which a common law tort for invasion of privacy is recognized, it has been consistently held that surreptitious electronic recording of a plaintiff's conversation causing him emotional distress is actionable. Despite some variations in the description and the labels applied to the tort, there is agreement that publication is not a necessary element of the tort, that the existence of a technical trespass is immaterial, and that proof of special damages is not required. [Numerous citations omitted] (449 F.2d at page 247) "Although the issue has not been squarely decided in California, we have little difficulty in concluding that clandestine photography of the plaintiff in his den and the recordation and transmission of his conversation without his consent resulting in his emotional distress warrants recovery for invasion of privacy in California. California began developing a common law privacy tort in 1931 with the decision of Melvin v. Reid, 112 Cal. App. 285, 297 P. 91. Since then, the California Supreme Court has decided a number of privacy cases in some of which there are indications that California would recognize the plaintiff's claim. (449 F.2d at 248)
* * * * * *
"* * * The First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering. The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office. It does not become such a license simply because the person subjected to the intrusion is reasonably suspected of committing a crime." [Numerous citations omitted] (449 F.2d at page 249)
* * * * * *
"Defendant relies upon the line of cases commencing with New York Times Co. v. Sullivan (1964) 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, and extending through Rosenbloom v. Metromedia, Inc. (1971) 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) to sustain its contentions that (1) publication of news, however tortiously gathered, insulates defendant from liability for the antecedent tort, and (2) even if it is not thus shielded from liability, those cases prevent consideration of publication as an element in computing damages." (449 F.2d at page 249)
* * * * * *

*111 "As we previously observed, publication is not an essential element of plaintiff's cause of action. Moreover, it is not the foundation for the invocation of a privilege. Privilege concepts developed in defamation cases and to some extent in privacy actions in which publication is an essential component are not relevant in determining liability for intrusive conduct antedating publication. (Cf. Nimmer, `The Right to Speak From Time to Time: First Amendment Theory Applied to Libel and Misapplied to Privacy' (1968) 56 Calif.L.Rev. 935, 957.) Nothing in New York Times or its progeny suggests anything to the contrary. Indeed, the Court strongly indicates that there is no First Amendment interest in protecting news media from calculated misdeeds. (E.g., Time, Inc. v. Hill, supra, 385 U.S. 374 at 389-390 and 384 n. 9, 87 S.Ct. 534, 17 L.Ed.2d 456.)" (449 F.2d at pages 449 and 450)
"No interest protected by the First Amendment is adversely affected by permitting damages for intrusion to be enhanced by the fact of later publication of the information that the publisher improperly acquired. Assessing damages for the additional emotional distress suffered by a plaintiff when the wrongfully acquired data are purveyed to the multitude chills intrusive acts. It does not chill freedom of expression guaranteed by the First Amendment. A rule forbidding the use of publication as an ingredient of damages would deny to the injured plaintiff recovery for real harm done to him without any countervailing benefit to the legitimate interest of the public in being informed. The same rule would encourage conduct by news media that grossly offends ordinary men.
"The judgment is affirmed."
(449 F.2d at page 250).
Unquestionably the fire in appellant's home coupled with the tragic death of her daughter was of obvious legitimate public interest. That the published matter complained of is of general public interest has always been considered a defense to a claim of invasion of privacy by publication. Finding that the matter published was of obvious legitimate public interest, the publication, per se, was not an invasion of privacy.[23] However, if the entry by appellee's employees into appellant's home constituted a trespass or "intrusion" it follows that such intrusion constituted a sufficient basis for the tort of invasion of privacy, entitling the injured party (appellant here) to such damages incident to the trespass action as may be proved to have resulted therefrom.[24] As stated in Pearson v. Dodd:
"We approve the extension of the tort of invasion of privacy to instances of intrusion, whether by physical trespass or not, into spheres from which an ordinary man in a plaintiff's position could reasonably expect that the particular defendant should be excluded. Just as the Fourth Amendment has expanded to protect citizens from government intrusions where intrusion is not reasonably expected, so should tort law protect citizens from other citizens. The protection should not turn exclusively on the question of whether the intrusion involves a technical trespass under the law of property. The common law, like the Fourth Amendment, should `protect people, not places'". (410 F.2d 701 at page 704)
We do not here hold that a trespass or "intrusion" did in fact occur sub judice: We simply find that such is alleged in Count I of the amended complaint and that the proofs before the learned trial judge were insufficient to resolve the point by summary judgment.
Count I of the amended complaint seeks punitive damages in addition to compensatory. Punitive damages are, of course, properly recoverable when the *112 requisite elements are present.[25] Although not unambiguously, the Supreme Court of the United States in Cantrell v. Forest City Publishing Co.[26] distinguished between "actual malice" as established in New York Times Co. v. Sullivan[27] and the commonlaw standard of "malice" required to support an award of punitive damages. In our view the Supreme Court intended to hold in Cantrell v. Forest City Publishing Co. that under factual situations as alleged sub judice the commonlaw standard is applicable. Being so, it is apparent from a reading of the first count of the amended complaint that plaintiff's allegations met the tests of the authorities above mentioned. However, it is equally apparent that in responding to the defendant's motion for summary judgment the plaintiff did not rebut by facts under oath the negative allegations of fact contained in the defendant's affidavits.[28] Accordingly although we here recognize that punitive damages are recoverable in a proper case for trespass resulting in an invasion of privacy, we find from the record before us that the learned trial judge did not err in granting a motion for summary judgment in favor of the defendant on the issue of punitive damages in the case sub judice.
As to Count II of appellant's complaint, a careful reading thereof reveals that it is no more than a reiteration of the allegations contained in Count I, absent the allegation of trespass. There is no allegation of falsity or defamation. Neither are there any allegations sufficient to bring that count within the ambit of Cantrell v. Forest City Publishing Co., supra. There is nothing in the allegations of that count, nor does there appear anything in the record-on-appeal, to suggest that by further amendments the count could be amended to state a cause of action for any claim not encompassed by the allegations of Count I. It follows that the learned trial judge was eminently correct in dismissing Count II with prejudice.
We now turn to a consideration of Count III of appellant's amended complaint which count seeks damages, compensatory and punitive, for an alleged intentional infliction of emotional distress. Such an action has long been recognized in Florida and elsewhere.[29] To sustain such an action the complaint must allege conduct exceeding all bounds that could be reasonably tolerated by society of a nature especially calculated to cause severe emotional distress to a person of ordinary sensibilities and the wrongful act alleged must be such as to reasonably imply malice or be such that, from the entire want of care or attention to duty or great indifference to the person, property or rights of others, such malice may be imputed as would justify assessment of exemplary or punitive damages. The wrongful act giving rise to the cause of action must also have been done intentionally or in reckless disregard of the rights of others.
Although we find that the allegations of Count III of the amended complaint sub judice were such as to meet the requirements above mentioned, there is nothing in the record-on-appeal to support the allegations. On the contrary, the affidavits filed in support of the motion for summary judgment negated the allegations of Count III in that regard, and those affidavits were not rebutted. *113 No issue of material fact having been demonstrated as to the allegations of Count III of the amended complaint, the learned trial judge was eminently correct in entering summary judgment thereon in favor of the defendant, appellee here.[30]
In summary, we reverse as to compensatory damages as alleged in Count I and affirm as to punitive damages alleged in that count. We further affirm as to dismissal of Count II and the summary judgment as to Count III.
Remanded for further proceedings consistent herewith.
RAWLS, J., concurs.
McCORD, J., dissents.
McCORD, Judge (dissenting).
I disagree with the ruling of the majority opinion that the news photographer, in entering the burned home, was a trespasser, and that, thus, the photograph published by appellee and the news story resulting from the entry were an actionable invasion of privacy. The only photographs taken and published were of fire damage  none were of deceased or injured persons. There, is no contention that the particular photograph complained of (the silhouette picture) and the news story were in any way false or inaccurate. There could, therefore, be no recovery under the "false-light" doctrine of invasion of privacy. See Cantrell v. Forest City Publishing Company, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). Thus, there could be no recovery from the publication if the same photograph had come from a source other than from the news photographer's entry upon the premises. Any recovery in this case must necessarily be based upon trespass, and, therefore, the only question is whether or not there was a trespass by the news photographer. The majority opinion discusses the implied consent doctrine under which a person, who does not have express consent from the owner or possessor of premises, may legally enter under circumstances which infer or imply consent (common usage, custom and practice). It is my view that the entry in this case was by implied consent.
It is not questioned that this tragic fire and death were being investigated by the fire department and the sheriff's office and that arson was suspected. The fire was a disaster of great public interest and it is clear that the photographer and other members of the news media entered the burned home at the invitation of the investigating officers. (Numerous members of the general public also went through the burned house.) Many affidavits of news editors throughout Florida and the nation and affidavits of Florida law enforcement officials were filed in support of appellee's motion for summary judgment. These affidavits were to the general effect that it has been a long-standing custom and practice throughout the country for representatives of the news media to enter upon private property where disaster of great public interest has occurred  entering in a peaceful manner, without causing any physical damage, and at the invitation of the officers who are investigating the calamity. The affidavits of law enforcement officers indicate that the presence of the news media at such investigations is often helpful to the investigations in developing leads, etc.
The affidavits as to custom and practice do not delineate between various kinds of property where a tragedy occurs. They apply to any such place. If an entry is or is not a trespass, its character would not change depending upon whether or not the place of the tragedy is a burned out home (as here), an office or other building or place. An analysis of the cases on implied consent by custom and usage, indicates that they do not rest upon the previous nonobjection to entry by the particular owner of the property in question but rest upon custom and practice generally. Implied *114 consent would, of course, vanish if one were informed not to enter at that time by the owner or possessor or by their direction. But here there was not only no objection to the entry, but there was an invitation to enter by the officers investigating the fire. The question of implied consent to news media personnel to enter premises in a circumstance such as this appears to be one of first impression not only in this jurisdiction but elsewhere. This, in itself, tends to indicate that the practice has been accepted by the general public since it is a widespread practice of long standing. Due to such widespread and long-standing custom, reason and logic support the application of implied consent to enter the premises in the case before us. It, therefore, was not a trespass, and I would affirm the trial court.
NOTES
[1] Leonard v. Nat Harrison Associates, Inc., Fla.App.2nd 1960, 122 So.2d 432.
[2] See Harris v. Baden, 1944, 154 Fla. 373, 17 So.2d 608, wherein the Court said: "At the common law, every entry upon another's land, except by consent, was deemed a trespass for which satisfaction would lie. Every man's land was considered, as a matter of law, to be enclosed and set apart from his neighbor's, either by a visible and material fence or by an ideal invisible boundary existing only in contemplation of the law. * * *"
[3] Leonard v. Nat Harrison Associates, Inc., supra.
[4] 52 Am.Jur., Trespass, § 47 and cases there cited.
[5] Restatement of the Law of Torts, Chapter 8, § 167, et seq.
[6] Restatement of the Law of Torts, Chapter 8, § 167, Comment d.; 52 Am.Jur., Trespass, § 39.
[7] 52 Am.Jur., Trespass, § 39 and cases there cited.
[8] Boston Manufacturers Mut. Ins. Co. v. Fornalski, Fla.App.4th 1970, 234 So.2d 386, and authorities therein cited.
[9] 52 Am.Jur., Trespass, § 39 and cases there cited. See also Prior v. White, 1938, 132 Fla. 1, 180 So. 347; Martin v. Struthers, 1943, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313.
[10] Boston Manufacturers Mutual Insurance Company v. Fornalski, supra.
[11] 39 Fla. Supp. 136 (1973).
[12] 1922, 260 U.S. 127, 43 S.Ct. 16, 67 L.Ed. 167.
[13] 1943, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313.
[14] 133 U.S.App.D.C. 279, 410 F.2d 701 (1969).
[15] 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed. 822.
[16] (6th Cir.1973) 484 F.2d 150, certiorari granted and case reversed by the Supreme Court of the United States, Cantrell v. Forest City Publishing Co., (1974) 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419.
[17] Please see citations in footnotes 6, 7, 8, 9, 10 and 11 above.
[18] Boston Manufacturers Mutual Insurance Co. v. Fornalski, supra; State v. Blocker, supra; Prior v. White, supra.
[19] The facts recited in Prior v. White, supra, reveal that there the court was not considering an entry into a residence. The entire transaction which gave rise to the appellant's prosecution under the ordinance which was decreed unconstitutional took place on the porch of the prosecuting witness and not inside her home. By way of dicta the court there stated "it has been held that a license may be implied to entered the house of another, at usual and reasonable hours, and in a customary manner for any of the common purposes of life" citing Lakin v. Ames, 64 Mass. (10 Cush.) 198 and Section 167 of the Restatement of Torts. The only portion of Section 167 of the Restatement of Torts which can possibly be construed to relate to entries into (as distinguished from upon) the residence of another is the statement that upon "the possessor's failure to object to a particular entry, or his acquiescence to similar entries on previous occasions, may lead the actor reasonably to believe that the possessor is willing that he shall enter the land." (Emphasis added) There, it will be noted, it is the possessor's failure to object that leads to consent by custom not the failure of some remote third party to object. Examination of Lakin v. Ames reveals that entry into a residence was not there involved. In that case the defendant had removed a shed built by the plaintiff on the town common which shed interfered with the plaintiff's access to his family burial tomb. The court simply held that there was no trespass, and gratuitously by way of dictum added "thus it has been held that the entry upon another's close or into his house, at usual and reasonable hours, and in a customary manner, for any of the common purposes of life, cannot be regarded as trespass." (64 Mass. (10 Cush.) 220) No authorities for that statement were cited and the statement had nothing to do with the facts of that case.
[20] Dunnavant v. State, Sup.Ct.Fla. 1950, 46 So.2d 871; see also Swartz, Woodrum and Haynes v. State, Fla.App., 316 So.2d 618.
[21] See Thompson v. City of Jacksonville, Fla. App. 1st 1961, 130 So.2d 105).
[22] 449 F.2d 245 (9th Cir.1971).
[23] Pearson v. Dodd, supra.
[24] Pearson v. Dodd, supra; 52 Am.Jur., Trespass, § 47, and cases therein cited.
[25] Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214; Cason v. Baskin, 1947, 159 Fla. 31, 30 So.2d 635; Buie v. Barnett First National Bank of Jacksonville, Sup.Ct.Fla. 1972, 266 So.2d 657; Campbell v. Government Employees Insurance Co., Sup.Ct.Fla. 1974, 306 So.2d 525, reh. den. Feb. 13, 1975.
[26] 1974, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419.
[27] 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 686.
[28] Rule 1.510 R.C.P.
[29] Kirksey v. Jernigan, Sup.Ct.Fla. 1950, 45 So.2d 188; Korbin v. Berlin, Fla.App. 3rd 1965, 177 So.2d 551; Kimple v. Riedel, Fla. App. 2nd 1961, 133 So.2d 437; LaPorte v. Associated Independent, Inc., Sup.Ct.Fla. 1964, 163 So.2d 267; 32 Fla.Jur., Torts, § 15; Restatement of the Law of Torts, 2nd Ed., § 46, 312.
[30] See Kimple v. Riedel, supra.