340 So.2d 914 (1976)
FLORIDA Publishing Company, a Florida Corporation, Petitioner (Defendant),
v.
Klenna Ann Fletcher, Etc., Respondent (Plaintiffs).
No. 48372.
Supreme Court of Florida.
October 7, 1976.
Rehearing Denied January 10, 1977.
Harold B. Wahl, of Wahl & Gabel, Jacksonville, for petitioner.
*915 Ellis E. Neder, Jr., and Rudolph J. Inman, Jr., Jacksonville, for respondent.
George D. Gabel, Jr., of Wahl & Gabel, Jacksonville, and Richard N. Winfield and Betty B. Robbins, of Rogers & Wells, New York City, for Associated Press.
Charles S. Isler, Jr., and George P. Daniels, of Isler, Higby, Brown & Smoak, Panama City, for Florida Freedom Newspapers, Inc.
William C. Ballard, of Baynard, Lang & Ballard, St. Petersburg, for Times Publishing Co.
Ted R. Manry, III, of MacFarlane, Ferguson, Alison & Kelly, Clearwater, for The Tribune Co.
J. Laurent Scharff, of Pierson, Ball & Dowd, Washington, D.C., and George D. Gabel, Jr., of Wahl & Gabel, Jacksonville, for Radio Television News Directors Association.
George D. Gabel, Jr., of Wahl & Gabel, Jacksonville, for The Greater Jacksonville Chapter of the Society of Professional Journalists/Sigma Delta Chi.
William G. Mateer, of Mateer, Harbert, Bechtel & Phalin, Orlando, and John W. Fleming and Rex Conrad, of Fleming, O'Bryan & Fleming, Fort Lauderdale, for Gore Newspapers Co. and Sentinel Star Co.
Dan Paul and Sanford L. Bohrer, of Paul & Thomson, Miami, for The Miami Herald Publishing Co., The New York Times Company and Gannett Company, Inc.
DuBose Ausley and C. Gary Williams, of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for The Tallahassee Democrat and Florida Society of Newspaper Editors.
James D. Whisenand, Deputy Atty. Gen., and Sharyn L. Smith, Asst. Atty. Gen., for Robert L. Shevin, Atty. Gen., State of Florida, amici curiae.
ROBERTS, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, First District, in Fletcher v. Florida Publishing Co., reported at 319 So.2d 100 (Fla.App. 1, 1975), which directly conflicts with Jacova v. Southern Radio and Television Co., 83 So.2d 34 (Fla. 1955), thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(3), Florida Constitution.
The facts supported by the record are succinctly stated in the summary final judgment of the trial judge who determined that there was no real dispute as to the material facts. Respondent, Mrs. Fletcher, left Jacksonville for New York on September 15, 1972, to visit a friend. She left in Jacksonville her three young daughters, including seventeen-year-old Cindy. A "baby sitter" was to spend the nights with the children, but there was no one with them in the home during the daytime except a young man who had a room in the house and whom Mrs. Fletcher described as Cindy's "boy friend." On the afternoon of September 15, 1972, while Cindy was alone in the house, a fire of undetermined origin did large damage to the home, and Cindy died.
The fire and police departments were called by a neighbor who discovered the fire, but too late to save the child. A large group of firemen, news media representatives, and onlookers gathered at the scene and on Mrs. Fletcher's property.
When the Fire Marshal and Police Sergeant Short entered the house to make their official investigation, they invited the news media to accompany them, as they deposed was their standard practice. The media representatives entered through the open door; there was no objection to their entry; they entered quietly and peaceably; they did no damage to the property; and their entry was for the purpose of their news coverage of this fire and death.
The Fire Marshal desired a clear picture of the "silhouette" left on the floor after the removal of Cindy's body. He and Sergeant Short in their depositions explained that the picture was important for their respective investigations to show that the body was already on the floor before the heat of the fire did any damage in the room. The Fire Marshal took one polaroid *916 picture of the silhouette, but it was not too clear, he had no further film, and he requested photographer Cranford to take the "silhouette" picture which was made a part of the official investigation file of both the Fire and Police.
This picture was not only a part of the investigation but News Photographer Cranford turned it and his other pictures over to the defendant newspaper. It and several other pictures appeared in the news story of The Florida Times-Union on September 16, 1972.
Respondent first learned of the facts surrounding the death of her daughter by reading the newspaper story and viewing the published photographs.
Respondent filed an amended complaint against petitioner alleging (1) trespass and invasion of privacy, (2) invasion of privacy, (3) wrong intentional infliction of emotional distress  seeking punitive damages.
The trial court dismissed Count II and granted final summary judgment for petitioner as to Counts I and III. Relative to the granting of summary judgment for Petitioner as to Count I, the trial judge cogently explicated:
"As to Count I, the question raised by the motion for summary judgment is one of law as there is no genuine issue of material fact. The question raised is whether the trespass alleged in Count I of the complaint was consented to by the doctrine of common custom and usage.
"The law is well settled in Florida and elsewhere that there is no unlawful trespass when peaceable entry is made, without objection, under common custom and usage. See Prior v. White (1938) 132 Fla. 1, at 19, 180 So. 347; Boston v. Fornalski (Fla. DCA 4, 1970) 234 So.2d 386, 387; 52 Am.Jur., Trespass, Section 39; 87 C.J.S., Trespass, Section 49b; Conley on Torts (4th Edition) Sections 251 and 248; Harper and James on Torts, Section 1.11; Restatement of the Law of Torts, Section 167(d), Trespass, page 403.
"In Martin v. Struthers (1943) 319 U.S. 141, 149 [63 S.Ct. 862, 87 L.Ed. 1313], the Court struck down an unconstitutional and `invalid in conflict with the freedom of speech and press' a city ordinance which made it unlawful trespass to knock on doors and ring doorbells to distribute literature. In so doing, at pages 147-149 [63 S.Ct. 862] it made the far reaching pronouncement followed by the Florida Supreme Court in Prior v. White (Fla. 1938) 132 Fla. 1, 180 So. 347, 356:
"`Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off. * * We know of no state which, as does the Struthers ordinance in effect, makes a person a criminal trespasser if he enters the property of another for an innocent purpose without an explicit command from the owners to stay away.'
"In McKee v. Gratz (1922) 262 [260] U.S. 127 [43 S.Ct. 16, 67 L.Ed. 167], the Supreme Court recognized the rule that it was not trespass when under the `habits of the country' entry was commonly made.
* * * * * *
"Not only did the Fire Marshal and Detective Sergeant Short testify it was common custom and usage to permit the news media to enter under the circumstances here, and of the great number of times they had permitted it in private homes, but many affidavits were filed to the same effect, including those of Duval County Sheriff Carson and Florida Attorney General Shevin.
"Similar affidavits have been filed from the Chicago Tribune; the ABC-TV News, New York; the Tallahassee Democrat; the Pensacola Journal; the Associated Press; the President of the American Newspaper Publishers Association; the President of the Radio Television News Directors Association; the Miami Herald; United Press International; The Florida Times-Union and Jacksonville Journal; The Washington Post; TV-12 at Jacksonville; TV-10 at Miami; TV-4 at Jacksonville; the New York Daily News; the Milwaukee Journal; the Birmingham *917 Post-Herald; the Memphis Commercial Appeal; the Macon Telegraph; and the Tampa Tribune; all attesting that it is common usage, custom and practice for news media to enter private premises and homes under circumstances like those here.
"Plaintiff filed no affidavits except her own; she makes no attempt to qualify as an expert; and she simply states her personal belief generally, without going into the situation involving coverage of a news story of public interest. She shows no qualifications to make an affidavit on the custom and usage in such matters.
"In Mrs. Fletcher's deposition, she stated she was in New York at the time of the fire; there was no one at the scene who objected to the entry; and she makes it clear she does not contend there was any force used for entry, or any physical damage done to the premises.
"Plaintiff likewise concedes that it was perfectly proper for the Fire and Police to enter without permission. The Fire and Police used the picture as part of their official investigation and actually requested that such picture be taken and would have made such request even had the Plaintiff been there and objected. There is no evidence that any restriction was placed upon the Defendant's photographer in the use of the photographs he took at the request of the Police and Fire Marshal.
"Numerous affidavits, as above set forth, have been filed by the Defendant in support of its motion for summary judgments. All these affidavits attest to the fact that it is common usage, custom and practice for news media to enter private premises and homes to report on matters of public interest or a public event. The court therefore finds that there is no genuine issue of material fact and that as a matter of law an entry, that may otherwise be an actionable trespass, becomes lawful and non-actionable when it is done under common usage, custom and practice. The court further finds that the entry complained of in Count I of the Plaintiff's complaint was one permitted by common usage, custom and practice, and that the Defendant is entitled to a summary judgment as a matter of law as to matters alleged in Count I of the Plaintiff's complaint."
On appeal, the District Court of Appeal reversed as to the granting of summary judgment on Count I, stating:
"We do not here hold that a trespass or `intrusion' did in fact occur sub judice: We simply find that such is alleged in Count I of the amended complaint and that the proofs before the learned trial judge are insufficient to resolve the point by summary judgment."
Although recognizing that consent is an absolute defense to an action for trespass and that the defense of custom and usage is but another way of expressing consent by implication  that is consent may be implied from custom, usage or conduct  the District Court commented that the emergency of the fire was over and that there was no contention that petitioner's employees entered the premises to render assistance, explained that respondent did not either impliedly or expressly invite petitioner's employees into her home, and concluded that the proofs before the court were not sufficient to show that there was no genuine issue of material fact as to whether implied consent by custom and usage authorized entry into the premises without invitation by appellant.
As to the other points on appeal, the District Court of Appeal, First District, determined that although punitive damages are recoverable in a proper case for trespass resulting in invasion of privacy, the trial judge did not err in granting summary judgment for petitioner on issue of punitive damages, held that the trial court correctly dismissed Count II with prejudice, and correctly granted summary judgment for petitioner as to Count III.
The District Court erred in reversing summary judgment for petitioners as to Count I. The trial court properly determined from the record before it that there was no genuine issue of material fact insofar *918 as the entry into respondent's home by petitioner's employees became lawful and non-actionable pursuant to the doctrine of common custom, usage, and practice and since it had been shown that it was common usage, custom and practice for news media to enter private premises and homes under the circumstances present here.
Judge McCord in his dissenting opinion could not agree with the majority that the news photographer who entered the burned out home was a trespasser or that the photograph published by petitioner and the news story resulting from the entry were an actionable invasion of privacy. We agree with and approve the following well-reasoned explication by Judge McCord in his dissenting opinion:
"The only photographs taken and published were of fire damage  none were of deceased or injured persons. There, is no contention that the particular photograph complained of (the silhouette picture) and the news story were in any way false or inaccurate. There could, therefore, be no recovery under the `false-light' doctrine of invasion of privacy. See Cantrell v. Forest City Publishing Company, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). Thus, there could be no recovery from the publication if the same photograph had come from a source other than from the news photographer's entry upon the premises. Any recovery in this case must necessarily be based upon trespass, and, therefore, the only question is whether or not there was a trespass by the news photographer. The majority opinion discusses the implied consent doctrine under which a person, who does not have express consent from the owner or possessor of premises, may legally enter under circumstances which infer or imply consent (common usage, custom and practice). It is my view that the entry in this case was by implied consent.

"It is not questioned that this tragic fire and death were being investigated by the fire department and the sheriff's office and that arson was suspected. The fire was a disaster of great public interest and it is clear that the photographer and other members of the news media entered the burned home at the invitation of the investigating officers. (Numerous members of the general public also went through the burned house.) Many affidavits of news editors throughout Florida and the nation and affidavits of Florida law enforcement officials were filed in support of appellee's motion for summary judgment. These affidavits were to the general effect that it has been a long-standing custom and practice throughout the country for representatives of the news media to enter upon private property where disaster of great public interest has occurred  entering in a peaceful manner, without causing any physical damage, and at the invitation of the officers who are investigating the calamity. The affidavits of law enforcement officers indicate that the presence of the news media at such investigations is often helpful to the investigations in developing leads, etc.
"The affidavits as to custom and practice do not delineate between various kinds of property where a tragedy occurs. They apply to any such place. If an entry is or is not a trespass, its character would not change depending upon whether or not the place of the tragedy is a burned out home (as here), an office or other building or place. An analysis of the cases on implied consent by custom and usage, indicates that they do not rest upon the previous nonobjection to entry by the particular owner of the property in question but rest upon custom and practice generally. Implied consent would, of course, vanish if one were informed not to enter at that time by the owner or possessor or by their direction. But here there was not only no objection to the entry, but there was an invitation to enter by the officers investigating the fire. The question of implied consent to news media personnel to enter premises in a circumstance such as this appears to be one of first impression not only in this jurisdiction but elsewhere. This, in itself, tends to indicate that the practice has *919 been accepted by the general public since it is a widespread practice of long-standing. Due to such widespread and long-standing custom, reason and logic support the application of implied consent to enter the premises in the case before us. It, therefore, was not a trespass, and I would affirm the trial court." (emphasis supplied)
Accordingly, that portion of the decision of the District Court of Appeal, First District, reversing summary judgment for petitioner as to Count I is quashed, and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.
SUNDBERG, J., dissents with an opinion.
ENGLAND, J., did not participate in this decision.
SUNDBERG, Justice (dissenting).
I dissent from the majority opinion. I dissent not because of the decision reached on merits, but because I cannot conscientiously conclude, as does the majority, that there is direct conflict between the decision of the District Court of Appeal in the instant case and Jacova v. Southern Radio & Television Co., 83 So.2d 34 (Fla. 1955). Jacova dealt altogether with the issue of whether a communications medium has a qualified privilege to publish the name or photo of a person who has become an "actor" in a newsworthy event. No element of trespass was presented in that case as it is here. In Jacova the plaintiff was photographed by television camera during a police "raid" at a cigar shop located in a hotel.
As explicated by the majority, the issue sub judice is whether the trial court erred in entering summary judgment on the count of the amended complaint which alleged trespass and invasion of privacy. The District Court of Appeal concluded that the proofs were insufficient to determine on summary judgment that there was no trespass based on the affidavits of "custom and usage" utilized to supply the implied consent to the entry found by the trial judge. The opinion below expressly recognized the principle of Jacova with respect to the privilege to publish matters of legitimate, general public interest without being subject to a claim of invasion of privacy:
"Unquestionably the fire in appellant's home coupled with the tragic death of her daughter was of obvious legitimate public interest. That the published matter complained of is of general public interest has always been considered a defense to a claim of invasion of privacy by publication. Finding that the matter published was of obvious legitimate public interest, the publication, per se, was not an invasion of privacy. However, if the entry by appellee's employees into appellant's home constituted a trespass or `intrusion' it follows that such intrusion constituted a sufficient basis for the tort of invasion of privacy, entitling the injured party (appellant here) to such damages incident to the trespass action as may be proved to have resulted therefrom... ." (Footnotes omitted)

Fletcher v. Fla. Publishing Co., 319 So.2d 100, 111 (Fla. 1st DCA 1975).
It might be asserted that there is conflict on the issue of trespass with the decision of this Court in Prior v. White, 132 Fla. 1, 180 So. 347 (1938). The Prior case dealt with the constitutionality of a municipal ordinance declaring solicitation "in and upon private residences" a nuisance. As pointed out by the majority below, the opinion discussed the principle of implied consent supplied by custom and usage but in the context of the city's exercise of its police power to declare certain conduct a nuisance. The District Court of Appeal opinion carefully discussed and distinguished the Prior decision as not being determinative of the trespass issue sub judice. Fletcher v. Fla. Publishing Co., supra, at 105.
Judge McCord in dissenting from the majority opinion below recognized that this is a case of first impression when he stated, "The question of implied consent to news media personnel to enter premises in a circumstance *920 such as this appears to be one of first impression not only in this jurisdiction but elsewhere." 319 So.2d 100, 113 at 114.
There is little doubt in my mind that this case is one of great public interest which would justify consideration by this Court. Nonetheless, our jurisdiction is circumscribed by Article V of the Constitution, and it is the function under our constitutional scheme of the district courts of appeal to initiate review by this Court of questions of great public interest through certification. See Article V, Section 3(b)(3), Florida Constitution.
As so aptly stated by Justice Drew in Fla. Power & Light Co. v. Bell, 113 So.2d 697, 699 (Fla. 1959):
"... Although the question at hand is not whether certiorari should be granted but whether the case is one within the express limitations of our constitutional provisions, the same principles of division of appellate jurisdiction were plainly operative in the drafting of our amended judiciary article and must influence any interpretation of its terms. The constitutional objectives can be achieved and the creation of the district courts justified only if we recognize that the primary function of this Court, particularly in the area of `conflicts' here involved, is to stabilize the law by a review of decisions which form patently irreconcilable precedents... ."
Finding no decisional conflict and the absence of certification of the question to this Court by the District Court of Appeal, First District, I would discharge the writ for lack of jurisdiction.
Rehearing denied; OVERTON, C.J., ADKINS, BOYD and HATCHETT, JJ., and ROBERTS, RET. J., concur.
SUNDBERG J., dissents.