John E. GRANDBOUCHE and National Commodity and Barter Association, Plaintiffs,

v.

Pauline ADAMS, et al., Defendants.

Civ. A. No. 80–C–1734.

United States District Court, D. Colorado.

Jan. 11, 1982.

**546**

William A. Cohan, Denver, Colo., and John E. Grandbouche, pro se, for plaintiffs.

Jack M. Wesoky, Randolph S. Atwater, P. C., Englewood, Colo., Nancy E. Rice, Asst. U. S. Atty., Denver, Colo., Angelo I. Castelli, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs, John E. Grandbouche and the National Commodity and Barter Association[1] (hereafter, the "NCBA"), bring this action against the defendants Pauline Adams, Gerald L. Mihlbachler,[2] Larry Lovell, Kenneth Batson, Larry Hyatt, Dennis Graham, the First National Bank of Englewood, and several unknown, unnamed persons alleged to be agents of the United States government. Plaintiffs allege that the defendants are conspiring to violate the plaintiffs' constitutional rights, and that the defendants have violated those rights by employing the defendant Adams to infiltrate the NCBA in order to obtain for the government documents and other information identifying the NCBA's members. Jurisdiction is founded on 28 U.S.C. § 1331.

Defendants have filed several motions, including motions for summary judgment.

---

1. The NCBA has been dismissed from this action for lack of standing to bring damages claims on behalf of its members. *See Warth v. Seldin*, 422 U.S. 490, 511–17, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). Plaintiffs' counsel has stated, however, that one or more individual NCBA members will seek to intervene. For simplicity's sake, therefore, I will retain the plural reference to "plaintiffs."

2. The parties have stipulated to dismissal of Mihlbachler from the action, with prejudice. The action has been dismissed as to him.

On November 5, 1981, oral argument was held on all pending motions. I ruled on most of the motions in open court, and repetition here of those rulings is unnecessary. Defendants' motions for summary judgment, to the extent they sought dismissal of the plaintiffs' First, Fourth, Fifth, and Sixth Amendment claims, were taken under advisement. This opinion deals with all matters under advisement.

## I. *Factual Background and Issues*

Since few facts are in dispute, only a limited factual discussion is required. Defendant Adams formerly was employed by either Grandbouche or the NCBA or both. Although the precise circumstances of Adams' initial contact with federal agents are uncertain, it is undisputed that federal agents equipped Adams with a wireless microphone, which she wore for several weeks during her working hours as an employee at NCBA's office. It is also undisputed that Adams removed documents from that office. The parties disagree, however, whether those documents were current NCBA papers and records, or were merely trash. Adams' activities form the primary basis for the plaintiffs' complaint.

Although the defendant Adams and the government defendants have submitted separate summary judgment motions, their arguments are nearly identical. Essentially, these defendants argue that their conduct did not violate the plaintiffs' constitutional rights. Since the plaintiffs have invoked specific constitutional amendments in support of their claims for relief, the defendants' arguments will be addressed on an amendment-by-amendment basis, in reverse order.

## II. *Plaintiffs' Sixth Amendment Claims*

 Plaintiffs claim that the defendants' conduct has deprived them of their Sixth Amendment right to the effective assistance of counsel. This Sixth Amendment guarantee applies, however, only to "critical stages" of a criminal prosecution. *United States v. Wade*, 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). No such critical stage had been reached when the defendants' allegedly im-

proper conduct occurred. Plaintiffs have not alleged that any NCBA members had been indicted or otherwise charged with violations of federal law when the government began to use Adams in its investigation. At oral argument, the plaintiffs relied on *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). That case, however, is distinguishable since Massiah had been arraigned on an information, had been rearraigned on a superseding indictment, and had retained counsel before the government began its electronic surveillance. Therefore, the defendants' motions for summary judgment dismissing the plaintiffs' Sixth Amendment claims must be granted.

## III. *Plaintiffs' Fifth Amendment Claims*

 Plaintiffs claim that the defendants' acts of intercepting conversations among NCBA members violates their Fifth Amendment rights against self-incrimination. This claim is without merit, since the plaintiffs have not demonstrated that any sort of compulsion to testify was exerted upon them. *See Hoffa v. United States*, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966). Therefore, the defendants' motions for summary judgment dismissing the plaintiffs' Fifth Amendment claim must be granted.

## IV. *Plaintiffs' Fourth Amendment Claims*

 Plaintiffs claim that the acts of intercepting conversations among NCBA members by a wireless microphone attached to the defendant Adams amount to unlawful searches and seizures prohibited by the Fourth Amendment. Defendants argue that their conduct did not violate the Fourth Amendment since Adams consented to the interception of conversations held in her presence and the other defendants consented to have Adams hear everything she heard and transmitted. Defendants rely upon the consent exception for "wiretapping" recognized both in *United States v. White*, 401 U.S. 745, 751–53, 91 S.Ct. 1122, 1125, 28 L.Ed.2d 453 (1971) and the Omnibus Crime Control Act, 18 U.S.C. § 2511(2)(c).

Plaintiffs admit that such a consent exception exists, but argue that it cannot apply here since Adams was not a party to the intercepted conversations. The undisputed facts are that the wireless microphone worn by Adams picked up many conversations among NCBA members in which Adams, although present in the small room where the discussions occurred, neither spoke nor was included as a silent participant.

In recognizing a consent exception, the Supreme Court reasoned in *White* that a speaker whose conversation was intercepted had relinquished *any reasonable expectation* of privacy by speaking to a person who might be carrying a microphone. This analysis applies equally to a speaker who holds a conversation in the *presence* of a third party. Although the plaintiffs have argued that they did not expect Adams to listen to those conversations, and thus did not relinquish their expectation of privacy, the simple fact remains that Adams could hear those conversations, and could listen attentively without indicating to the plaintiffs that she was doing so. Even if she were not wearing a microphone, she could have reported the substance of those conversations to federal agents regardless of the plaintiffs' subjective perception of her attentiveness.

■ As to the plaintiffs' claim that Adams removed documents from NCBA's offices, a genuine issue of material fact exists. The evidence does not establish whether those documents were NCBA records or merely trash. Fourth Amendment protection of these documents turns on this factual question, and summary judgment is therefore inappropriate.

For the above-stated reasons, the defendants' motions for summary judgment on the plaintiffs' Fourth Amendment claims are granted as to the interception of conversations, but denied as to the alleged removal of documents.

V. *Plaintiffs' First Amendment Claims*

Plaintiffs claim that the defendants' conduct in placing a wireless microphone on Adams, using her to infiltrate the NCBA offices, and accepting documents she removed from those offices violated the plaintiffs' First Amendment rights to freedom of association. They contend that the government defendants selected them for closer scrutiny because of their political beliefs regarding the United States' tax, monetary, and economic systems. They further contend that the methods employed by these defendants had a direct and chilling effect on their right to hold such political beliefs and associate with others holding similar opinions.

■ It is clear from a reading of *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that a federal officer may be liable in "constitutional tort" for damages resulting from conduct that violates the First Amendment. Justice Harlan's concurring opinion in *Bivens* recognizes that federal courts have the power to award damages for violation of "constitutionally protected interests." *Bivens,* 403 U.S. at 399, 91 S.Ct. at 2006 (Harlan, J., concurring). Although a Fourth Amendment claim was the only claim presented for review in *Bivens,* it would be anomalous to recognize a damages remedy solely for Fourth Amendment violations. Indeed, such a limitation would be especially difficult to justify when, as here, a First Amendment claim is presented, since the courts have long alluded to the First Amendment's "preferred position" in the constitutional scheme. *See also Salabuddin v. Carlson,* 523 F.Supp. 314 (E.D.Va. 1981).

■ Nor can plaintiffs' First Amendment claims be dismissed simply because the defendants' conduct does not violate the Fourth, Fifth, or Sixth Amendments. The privacy and procedural rights guaranteed in those latter amendments are neither identical in subject matter nor coextensive in breadth of coverage with the political and religious freedoms enshrined in the First Amendment. Government agents may observe all the procedural regularities required by the Fourth, Fifth, and Sixth Amendments and yet unconstitutionally interfere with a particular individual's or

group's right to adhere to a chosen political or religious creed or practice.

This is certainly not to say that the First Amendment absolutely bars criminal investigations of religious or political groups. As in other "constitutional tort" cases, whether based on *Bivens* or 42 U.S.C. § 1983, government investigators are entitled to some sort of affirmative defense or qualified privilege, so that investigations are not unduly restricted. The nature and scope of such defense, however, has not yet been briefed by counsel, and I will not now address that issue.

It follows that the defendants' motions for summary judgment seeking dismissal of the plaintiffs' First Amendment claims are denied.

Accordingly,

IT IS ORDERED that the defendants' motions for summary judgment are granted in part and denied in part. Plaintiffs' Fifth and Sixth Amendment claims are hereby dismissed with prejudice. Plaintiffs' Fourth Amendment claims are hereby dismissed to the extent that they seek redress for the interception of the plaintiffs' conversations. Plaintiffs' Fourth Amendment claims based on document removal, and their First Amendment claims, remain pending.

It is further ORDERED that defendants who have been served with process, but have not yet answered, shall file their answers within twenty days from the date of this order.