820 So.2d 953 (2002)
Gloria INIGUEZ, Appellant,
v.
AMERICAN HOTEL REGISTER COMPANY, an Illinois corporation d/b/a American Health Care Supply, Appellee.
No. 3D01-1326.
District Court of Appeal of Florida, Third District.
May 8, 2002.
Rehearing and Rehearing Denied July 15, 2002.
*954 Randy M. Weber and William J. Brown, Miami, for appellant.
Lord, Bissell & Brook; Buchbinder & Elegant, Miami; E. Phillip Green and Ira M. Elegant, Miami, for appellee.
Before GERSTEN, GODERICH and SORONDO, JJ.
Rehearing and Rehearing En Banc Denied July 15, 2002.
PER CURIAM.
Gloria Iniguez appeals the lower court's order granting final summary judgment in favor of American Hotel Register Company ("AHR"). Ms. Iniguez contends that the trial court erred in determining that her contract with AHR was for an undefined term and therefore, terminable at will. We agree and reverse the lower court's order and grant summary judgment in favor of Ms. Iniguez.
In April 1997, Ms. Iniguez entered into a contract with AHR to become its exclusive sales representative in Ecuador. The contract consisted of two letters, dated April 11, 1997 and April 18, 1997. These letters were signed by Ms. Iniguez' son, Carlos Iniguez, AHR's director of export sales. The letter dated April 11, 1997, is titled "the commission agreement" and provides as follows:
COMMISSION AGREEMENT
As the exclusive representative for American Hotel Register Company, and American Health Care Supply in the country of Ecuador, Gloria Iniguez will receive 10% commission on all sales originating from Ecuador if the products are sold at catalog pricing. If the products sold are below catalog pricing Gloria Iniguez will receive 5% commission. American Hotel Register Company will not bypass, circumvent, or in any way exclude Gloria Iniguez from receiving her commission on any transaction originating from Ecuador.
American Hotel Register Company will only pay Gloria Iniguez commissions once sales have invoiced.
American Hotel Register Company agrees not to appoint any other agent, representative, distributor, person or company to represent American Hotel Register Company & American Health Care Supply in Ecuador.
Based on this agreement Gloria Iniguez agrees to pay all advertising expenses, sales trips, promotion expenses, market development costs, and operating expenses in Ecuador.
This agreement is consistent with other agreements made with other exclusive *955 representatives of American Hotel Register Company.
Carlos Iniguez
Director of Export Sales
(Emphasis added). The April 18, 1997 letter includes additional terms and states:
Dear Gloria,
Further to our commission agreement dated April 11, 1997, the duration of the exclusivity for Gloria Iniguez to represent American Hotel Register Company in the country of Ecuador will be for a period of five years commencing on April 11, 1997.
As indicated in the commission agreement American Hotel Register Company agrees not to appoint any other agent, representative, distributor, person or company to represent American Hotel Register Company & American Health Care Supply in Ecuador.
Carlos Iniguez
Director of Export Sales
(Emphasis added).
Pursuant to the terms of the contract, Ms. Iniguez undertook numerous expenses including purchasing and staffing an office in Quito, Ecuador; placing advertisements in numerous cities in Ecuador; and traveling to trade shows and conducting catalog shows, all in furtherance of promoting AHR's product line. A year and half into the five year contract, AHR sent a letter to Ms. Iniguez terminating her exclusive representative status, effective November 21, 1998. AHR offered to return Ms. Iniguez to non-exclusive status under conditions, which they would agree upon later.
Ms. Iniguez filed a four count complaint and sued AHR for (I) breach of contract, (II) unjust enrichment, (III) constructive fraud (breach of fiduciary duty) and (IV) accounting.[1] AHR moved for summary judgment on Counts I and II. The lower court granted final summary judgment on both counts and found that the contract was terminable at will. Iniguez appeals the trial court's order granting final summary judgment on Count I, breach of contract.
AHR argues that the trial court correctly construed the language of the letters to constitute a contract that was terminable at will. We disagree. The basic rules of contract construction applied to the facts in this case require a different result. See Maines v. Davis, 491 So.2d 1233, 1234 (Fla. 1st DCA 1986). First, the contract should be considered as a whole, not in isolated parts. Id. at 1234. Second, where the language used in a contract is unambiguous, the plain meaning of that language controls. Charles Bernard Ltd. v. Tobias Jewelry Ltd., 751 So.2d 711, 713 (Fla. 3d DCA 2000). Third, employment contracts without a definite term are generally terminable at will by either party; however, when a contract for employment provides a definite duration, the employment contract is enforceable. Story v. Culverhouse, 727 So.2d 1128, 1130 (Fla. 2d DCA 1999); Grappone v. City of Miami Beach, 495 So.2d 838, 839 (Fla. 3d DCA 1986). Finally, the interpretation of the contract should be consistent with reason, probability and the practical aspect of the transaction. Maines, 491 So.2d at 1234.
Applying the foregoing principles, we find that there is a legally enforceable contract. The written communications of April 11, 1997 and April 18, 1997 together constitute the written contract. The plain language of these two letters, *956 read as a whole, support the conclusion that the contract is for a definite term. Specifically, the contract provides a term of five years with a start date of April 11, 1997. The contract specifies the terms of compensation, providing for a commission rate of ten percent for items sold at catalog price and five percent for items sold under catalog price, and the contract outlines the procedure of payment, providing that commission will be paid once sales are invoiced. There was sufficient consideration to support the contract.[2] Furthermore, the exclusivity clause by itself means nothing. It would be absurd to find that the intent of the parties was for Ms. Iniguez to act as the exclusive representative for five years but to find that the duration of employment was undetermined. See Critchlow v. Williamson, 450 So.2d 1153, 1156 (Fla. 4th DCA 1984)(it is an elementary principle of contract construction that a reasonable interpretation of a contract is preferred to an unreasonable one). By viewing the terms of the contract between AHR and Ms. Iniguez and construing any ambiguities against the drafter, it is clear that the intent of the parties was that Ms. Iniguez would be employed as the exclusive representative for five years. See Murry v. Zynyx Marketing Communications Inc., 774 So.2d 714, 715 (Fla. 3d DCA 2000)(clear and unambiguous words of a contract are the best evidence of the intent of the parties).
Moreover, even if the trial court was correct that the contract did not contain an express statement as to duration, the court should have determined the intent of the parties by examining the surrounding circumstances and reasonably construing the agreement as a whole. City of Homestead v. Beard, 600 So.2d 450, 453 (Fla.1992). "If a period of duration can be inferred from the nature of a contract and the circumstances surrounding its execution, the contract is not terminable at will and a court should give effect to the manifest intent of the parties." Id. Although, it is our belief that the contract was not ambiguous, the surrounding circumstances and the conduct of the parties through their course of dealings clearly support our finding that the manifest intent of the parties was to have an enforceable contract for a duration of five years.
Accordingly, we reverse with directions for the trial judge to enter an order of final summary judgment in favor of Ms. Iniguez.
NOTES
[1] Ms. Iniguez subsequently filed a Notice of Dropping Count III, the constructive fraud claim, and after the order was entered on summary judgment, she moved to dismiss Count IV, the accounting claim, as moot.
[2] In consideration for the contract, Ms. Iniguez went to Ecuador, promoted AHR, invested money and set up a showroom. In return, AHR agreed to pay Ms. Iniguez commission on the products that she sold.