PITTS SALES, INC., a Florida corporation, Plaintiff,

v.

KING WORLD PRODUCTIONS, INC., a Delaware corporation, Larry Posner, individually and Matthew T. Yule, individually, Defendants.

No. 04–60664–CIV–COHN/SNOW.

United States District Court, S.D. Florida.

June 28, 2005.

Cynthia J. Becker, Harrah, OK, for Plaintiff.

Michael D. Sullivan, Jeanette Melendez Bead, Levine, Sullivan, Koch & Schulz, LLP, Washington, DC, Daniel F. Blonsky, Susan Elizabeth Mortenson, Burlington, Weil, Schwiep, Kaplan & Blonsky, PA, Miami, FL, Ralph Goldberg, Michael Ludwig, Anthony D. Bongiorno, CBS Law Dept., New York City (Of Counsel), for Defendants.

## ORDER

COHN, District Judge.

**THIS CAUSE** is before the Court on Defendants' Motion For Summary Judgment filed on February 7, 2005 [DE # 53] and Plaintiff's Motion For Summary Judgment filed on February 8, 2005 [DE # 63]. The Court heard oral argument on the parties' summary judgment motions on Friday, June 17, 2005. The Court has considered the motions, the respective responses and replies, the record in this case, the applicable law, and oral argument on the matter, and is otherwise duly advised in the premises.

## I. BACKGROUND

Plaintiff Pitts Sales, Inc. brought this action as a result of a television story broadcast on Inside Edition on February 3, 2003. Pitts Sales is a magazine sales company whose agents travel the country and canvass individuals, generally on a door-to-door basis, for the purpose of selling magazine subscriptions. (*See* DE # 1 at ¶ 10; Pitts Affidavit, DE # 64, at ¶ 3). In each location where the company travels, the agents stay at various hotels. (DE # 64 at ¶ 3). Plaintiff Pitts Sales rents hotel rooms and hotel conference rooms at these locations to transact its daily business. (*Id.*). Defendant King World produces and distributes Inside Edition, a television show which airs undercover investigative stories as well as news, entertainment and human interest stories. (*See* Yule Deposition, DE # 67, at p. 24–25; Posner Transcript; DE # 68, at p. 172–173).

In early 2003, Inside Edition decided to film, produce, and air a story about magazine sales companies, such as Plaintiff Pitts Sales, Inc. (*See* Complaint, DE # 1, at ¶ 9; Posner Deposition, DE # 68, at p. 20–24). Defendant Posner is the producer for Inside Edition who had primary responsibility for the story about Pitts Sales. (*See*

DE 68, at p. 13, 35). At the time, Defendant Yule was an associate producer for Inside Edition. (*See* Yule Deposition, DE # 67, at p. 22).

To gather information for the news report, Inside Edition sent producer Yule undercover to work as a sales agent with Pitts Sales. (*See* Defendants' Statement of Undisputed Facts ("Stmt"), at ¶¶ 9–11). To this end, on July 16 2003, Defendant Yule interviewed and applied for a sales position, during which he misrepresented his personal information and qualifications for the sales position. (*See id.* at ¶ 12, 17; Pitts Affidavit, DE # 64, at ¶ 4; Yule Deposition, DE # 67 at pp. 34, 58, 62–64). Based upon the information provided during the application and interview, Defendant Yule was offered and accepted a position as a magazine sales agent with Plaintiff. (*See* DE # 1 at ¶ 15; DE # 64 at ¶ 4).

While associated with Plaintiff, Defendant Yule recorded the day to day activities of Plaintiff and its agents and employees by using a hidden camera and microphone. (*See* DE # 1 at ¶ 16; Defendants' Stmt. ¶¶ 13,29). Since he wore the hidden camera, he recorded the activities he observed first hand. (Defendants' Stmt. ¶ 13,29; DE # 63 at p. 4). Portions of the video footage that Yule obtained were included in the news report. (*See* Defendants' Stmt. at ¶ 34). The news report examined the business practices of traveling door-to-door magazine sales companies, including harsh and abusive treatment of young sales agents, inadequate supervision of sales agents who often engage in underage drinking and illegal drug use, and deceptive sales practices. (*See* Declaration of Michael Sullivan, Exh. 13).

Following the broadcast of the Inside Edition story, Plaintiff commenced this action. The Complaint contains the follow-

ing counts: illegal interception of oral communications (Count I), use of illegally intercepted communications (Count II), Civil RICO (Count III), fraud (Count IV), trespass (Count V), and tortious interference with a contractual relationship (Count VI). On August 26, 2004, the parties filed a Stipulation For Voluntary Dismissal of Counts III and VI [DE # 25], which the Court dismissed by Order dated August 27, 2004 [DE # 26]. Thus, the Court need only address Counts I, II, IV, and V.

## II. *DISCUSSION*

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted) (if the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted"); *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Any doubts in this regard should be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. Counts I and II for Interception and Use in Violation of the Anti-wiretapping Statute

#### 1. *Standing*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 establishes a cause of action on behalf of any person whose oral communication is intercepted. 18 U.S.C. § 2520. Whether a corporation or association has standing to sue under the Wiretap Act is a question of law. *Smoot v. United Transportation Union*, 246 F.3d 633, 638 (6th Cir.2001). In *Hatchigian v. International Brotherhood of Electric Workers*, the court established that with respect to corporations and associations, the Wiretap Act "confers standing upon those who have a possessory interest in the communication." No. 87–7131, 1988 WL 100780, *1 (E.D.Pa.1988); *see also Smoot*, 246 F.3d at 640. In the case, the court found that the association, a union local, had a possessory interest in the communication because the conversation took place over a union telephone and concerned the local's affairs. *Hatchigian*, 1988 WL 100780, *1.

■ Defendants argue that Plaintiff lacks standing because the intercepted communications at issue do not involve any interests of Pitts Sales that would be sufficient to confer standing upon Plaintiff.[1] Specifically, Defendants point out that some of the communications involve sales agents from another company, Gemini Sales rather than any Pitts Sales' agents, or involve crude comments about a colleague's weight or the possession of "weed." (*See* DE # 64, videotape of excerpts). With respect to the oral communications intercepted in sales agents' hotel rooms, Defendants argue that Plaintiff does not have a possessory interest over the communications its sales agents made during non-working hours.

In response, Plaintiff does not dispute that standing is established when a corporation has a possessory interest in the intercepted communication as set forth in *Hatchigian* and *Smoot.* Rather, Plaintiff argues that it has a possessory interest in the intercepted communications because many of the intercepted communications do involve the discussion of Pitts Sales' business. Specifically, Plaintiff states in its pleadings that some of the conversations include sales agents discussing sales strategies and business practices while in the large conference rooms, company vans, and hotel rooms, such as a nightly meeting that took place in Yule's hotel room.[2] Though in its submissions to the Court Plaintiff did not cite to the excerpts containing these conversations, it did play the relevant excerpts for the Court at the summary judgment hearing.

Plaintiff identified four excerpts that contained conversations regarding Plain-

tiff's business. The first excerpt involved agents in a company car discussing their sales for the day as well as problems they encountered while making these sales. Excerpt two was recorded in a hotel conference room, which had been set up as the check-in room where agents went to check-in their sales for the day. During this interception, agents could be heard discussing their sales for the day, with one agent specifically describing how he was stopped by the police during his sales. The third excerpt involved agents in the check-in room discussing which cities Pitts Sales' agents had been to in the past and which cities they would be attending in the near future. The final excerpt shown to the Court involved a nightly meeting which took place in Defendant Yule's hotel room. Though Defendant Yule was not attending the meeting, he was present in the room while it was taking place and his microphone picked up the meeting taking place in another part of the room. At the meeting, agents were discussing what to say to overcome customers' objections and how to get customers interested in the sales.

The Court notes that Plaintiff only identified four excerpts in which business matters of Pitts Sales were being discussed. The remainder of the excerpts were either incomprehensible or did not involve Plaintiff's business matters. The Court finds that as to the excepts pertaining to business matters of Pitts Sales, Plaintiff has established a possessory interest over the communications. Though the conversations in the company vans, conference rooms, and hotel rooms did not involve confidential business, the Court finds that they did relate to Pitts Sales' business of

---

1. Plaintiff provided a videotape of excerpts from the hidden camera footage taken by Yule. (DE # 64; also Exh. 3 to Yule and Posner depositions). The videotape includes 13 separate excerpts which Plaintiff contends are in violation of 18 U.S.C. § 2520, *et. seq.* (*See* DE # 63, at p. 5 n. 8).

2. These nightly meetings were held for agents whose sales fell below the company's expectations.

selling magazine subscriptions. As such, the Court finds that Plaintiff has established standing under the Wiretap Act with respect to the four intercepted communications pertaining to Pitts Sales' business.

### 2. *Party to the Communication*

 Having established standing, the Court must next determine whether Defendant Yule was a party to the communications he intercepted in these four excerpts. Defendants argue that the wiretap claims under Counts I and II fail because Defendant Yule was legally permitted to record the oral communications at issue. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 prohibits the interception, use or disclosure of, among other things, oral communications subject to certain exceptions. 18 U.S.C. § 2511(1). One such exception exists if the interceptor is a party to the communication. Specifically, the Act provides as follows:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d).

The parties agree that Defendant Yule was not acting under color of law when he made the recordings and did not intercept the communications for the purpose of committing any criminal or tortious act. However, the parties disagree as to whether Defendant Yule was a party to the communications. Their arguments stem from differing interpretations of what constitutes a "party" to the communication.

Defendants argue that Yule was a party to the communications because he was always present in the room when he took the hidden video footage, even on those occasions when he was not engaging in the conversations around him. Plaintiff, on the other hand, argues that Yule was not a party to the communications in the 13 excepts at issue, even though they were uttered in his presence, because he was not speaking or being spoken to during these conversations. (*See* DE # 64). In other words, it is Plaintiff's contention that a party to the communication must be a direct participant in the communication.

Defendants rely primarily on *Grandbouche v. Adams* in support of their argument. In that case, an association's employee recorded oral communications uttered in her presence with a wireless microphone provided by federal agents. 529 F.Supp. 545 (D.Colo.1982) The defendants relied upon the consent exception under the anti-wiretap statute, § 2511(2)(c), to argue that their conduct did not violate the Fourth Amendment. Like here, the plaintiffs in *Grandbouche* argued that the exception did not apply since the employee making the recordings was not a party to the intercepted communications given that the microphone picked up many conversations among employees in which the interceptor "although present ... neither spoke or was included as a silent participant." *Id.* at 548. The court disagreed and found the consent exception applicable. The court specifically determined that plaintiffs had relinquished any expectation of privacy by speaking in the presence of a third party, noting that "the simple fact remains that [the interceptor] could hear those conversations, and could listen attentively without indicating to the plaintiffs that she was doing so." *Id.*

Plaintiff argues that this case is not directly applicable because the Court con-

ducted its reasoning under the Fourth Amendment.[3] Because of the Eleventh Circuit's decision in *Walker v. Darby*, distinguishing the Fourth Amendment from the anti-wiretapping statute, Plaintiff argues that the analysis in *Grandbouche* and other Fourth Amendment cases is not applicable. In *Walker*, a postal employee brought an action against his supervisors, alleging that they had intercepted his conversations with third parties in violation of the anti-wiretap statute. 911 F.2d 1573 (11th Cir. 1990). The issue before the court was not whether an exception to the wiretap act existed, but whether Plaintiff's claim for illegal interception of an oral communication could survive summary judgment.

The court established a three-part inquiry to determine whether a question of material fact remained as to the wiretap claim. *Id.* at 1577. One of the elements involved determining whether the plaintiff, or interceptee, had an expectation that his oral communications were not subject to interception. *Id.* With respect to this inquiry, the court explained that a distinction existed between an expectation of privacy as necessary under the Fourth Amendment and the expectation of non-interception under 18 U.S.C. § 2510(2), stating that "there is a difference between a public employee having a reasonable expectation of privacy in personal conversations taking place in the workplace and having a reasonable expectation that those conversations will not be intercepted by a device which allows them to be overheard inside an office in another area of the building." *Id.* at 1579.

Thus, Plaintiff's argues that the court must ascertain whether the individuals whose conversations were intercepted had an expectation that their communications would be recorded. Like in *Grandbouche*, where the court looked to whether the employees had relinquished their right to privacy, the Court, here, should also consider whether the sales agents relinquished their expectation of non-interception in determining whether Yule was a party to the communications.

The Court disagrees with Plaintiff's reasoning. First, the Court notes that the Eleventh Circuit in *Walker* did not have to decide whether the one-party consent exception under § 2511(2)(d) applied since under the facts of the case, it clearly did not; defendants were not present when the oral communications were made as they had set up an intercom near plaintiff's workstation that intercepted his communications. Instead, the Court in *Walker* reached the merits of the claim for illegal interception under the anti-wiretapping statute. Thus, this Court concludes that prior to examining the merits of Plaintiff's claims for interception and use, the Court must determine if one of the exceptions under the Act applies. In applying the § 2511(2)(d) exception, the Court finds that it need not engage in an inquiry as to whether Pitts Sales' agents had a reasonable expectation that their communications would not be intercepted, but only needs to determine whether Defendant Yule was a party to the communications.[4]

---

**3.** Indeed, many of the cases cited by Defendants are Fourth Amendment cases. *See United States v. Shryock*, 342 F.3d 948, 977–78 (9th Cir.2003); *Morgan v. United States*, 60 Fed.Appx. 180, 2003 WL 1459402 (9th Cir. 2003);

**4.** The Court notes that Plaintiff draws a line between inquiring into an individual's expectation of non-interception when the intercep-

tor is present, but not directly participating in a conversation, versus when the interceptor is participating. However, under this reasoning, an individual may still not expect his/her communications to be intercepted even when the interceptor is participating in the conversation and is, therefore, clearly a party to the communication. Under this scenario, the individual would have a reasonable expectation that his communication not be intercepted,

■ The Court concludes that a "party to the communication" under § 2511(2)(d) is defined as a party who is present when the oral communication is uttered and need not directly participate in the conversation. The Court notes that in contrast to *Walker*, where defendants had placed an intercom near plaintiff's work station and left the area, leaving the machine behind to intercept the communications, Defendant Yule wore the hidden camera on his person. Thus, the instant case does not present a situation where a communication was intercepted by an unseen auditor. *See Smith v. Wunker*, 356 F.Supp. 44, 46 (S.D.Ohio 1972)(examining section 2511(2)(d) exception and noting that "the concern of Congress was with the interception of private conversations by an unseen auditor."), *overruled on other grounds by Boddie v. ABC*, 731 F.2d 333 (6th Cir. 1984). The fact that Yule wore the intercepting device on his person and that the communications intercepted had to occur relatively close to Yule to be picked up by his microphone persuades the Court into finding that Yule's presence alone rendered him a party to the communications. Though the Court has been unable to locate a case discussing this precise issue, several related cases support this conclusion.

In *Sussman v. American Broadcasting Companies*, the Ninth Circuit had to apply the § 2511(2)(d) exception and specifically determine whether the reporter who intercepted the communications had done so for the purpose of committing a criminal or tortious act. 186 F.3d 1200 (9th Cir.1999). Even though the emphasis of the case was on a different provision of the one-party consent exception, not in dispute here, the Court determined that the reporter was "always a party to the conversations being taped" in a scenario where the journalist "used various surveillance devices to record the activities around her." *Id.* at 1201–1202. In the case, ABC hired an individual to pose as a psychic telephone advisor in order to gain access to the offices of the Psychic Marketing Network. While working in these offices, the reporter, like here, recorded the activities around her, some of which were aired in a segment of news program Prime Time Live. *Id.* at 1201. This Court acknowledges that the opinion does not specify whether the journalist was present, though not speaking, but finds that such a scenario is implied.

The Court is also persuaded by the reasoning in *Brooks v. American Broadcasting Companies*, in which the Northern District of Ohio analyzed a scenario opposite the one present here: whether an interceptor could be a party to a communication in which the interceptee, or nonconsenting party, did not meaningfully participate. 737 F.Supp. 431 (N.D.Ohio 1990). In the case, the plaintiff had filed a claim under the wiretap statute for interception of an oral communication arising from a taped interview taken by a reporter. Plaintiff argued that the one-party consent exception did not apply because the interview was essentially a one-sided conversation and the one party doing all of the talking, the interceptor, should not be able to take advantage of the exception. *Id.* at 437. The Court found no case law or legislative authority to support this novel argument, stating that a requirement of meaningful participation by the non-consenting party "would do more harm than good." *Id.* "Courts would be stalled trying to determine how much participation is

but would have no cause of action under the statute as a result of the one-party consent exception of § 2511(2)(d). Thus, the Court believes that drawing this line confuses the

inquiry into whether an interceptor is a party to the communication and creates more harm than good, as will be discussed below.

necessary, and there would be serious vagueness problems with such a requirement." *Id.*

The Court finds this reasoning applicable to the situation present here where the interceptor was not meaningfully participating in the communication. If Defendant Yule's presence is not enough to make him a party to the communication, the Court would be stalled trying to determine the extent of Yule's participation, whether Yule spoke at any point during the communication, whether any of the oral communications were directed at Yule, whether a speaker made eye contact with Yule so as to include him in the conversation, etc. For example, in one of the excerpts played during the oral arguments, Plaintiff acknowledged that during certain portions of the excerpt, which took place in a hotel conference room, Yule had participated in the communication while in other segments he had not. Yet, Plaintiff argued that the one-party consent exception should not apply to those portions of the excerpt in which Yule was not spoken to or did not speak, leaving it up to the Court to determine at which point in the conversation Yule ceased being a party and at which point he regained his status as a party to the communication. The Court finds that accepting Plaintiff's interpretation of the statute would create practical problems not envisioned by the statute.

Since Defendant Yule was always present when the communications were uttered and had the hidden camera on his person, the Court finds that he was a party to the communication under § 2511(2)(d) and lawfully intercepted the communications at issue. Therefore, the Court enters summary judgment in favor of Defendants on Counts I for interception and Count II for use under 18 U.S.C. § 2511.

### C. Count IV for Fraud

 In its summary judgment motion, Plaintiff asserts that it relied on Yule's misrepresentations or omissions in offering him a position with the company. Florida law recognizes that fraud can occur by omission, and places on one who undertakes to disclose material information a duty to disclose that information fully. *Gutter v. Wunker*, 631 So.2d 1117, 1118–19 (Fla. 4th DCA 1994). Plaintiff argues that it has proven the elements of fraud by showing that Yule made a false statement or intentional omission concerning a specific fact, knowing it to be false, intending that the representation or omission induce Plaintiff's reliance, and causing injury to Plaintiff. Under the fraud claim, Plaintiff seeks compensatory damages, which include the costs of hiring and training Defendant Yule. (*See* DE # 1 at ¶ 47; Plaintiff's opposition to Defendants' motion to dismiss, DE # 23, at p. 7("Pitts Sales is seeking in Count IV to recover monies spent hiring and training Yule."); Pitts Deposition, Declaration of Sullivan, Exh. C at pp. 94–95 (stating that Pitts Sales' fraud damages include "the time and expense of hiring [Yule]")). According to its initial disclosures, Plaintiff incurred actual damages of at least $93.50, which reflects the amount Yule allegedly owed the company at the time of his departure. (*See* Declaration of Sullivan, Exh. 2).

In contrast, Defendants argue that there is no genuine issue as to the fraud claim because Plaintiff's alleged damages were not proximately caused by its reasonable reliance on Yule's misrepresentations. They assert that Plaintiff did not reasonably rely on Yule's misrepresentations in incurring the costs of hiring and training him.

 Under Florida law, the essential elements of a cause of action for fraud are: (1) a false statement of fact; (2) known by

the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury. *National Ventures, Inc. v. Water Glades 300 Condom. Ass'n,* 847 So.2d 1070, 1074 (Fla. 4th DCA 2003); *Ward v. Atlantic Sec. Bank,* 777 So.2d 1144, 1146 (Fla. 3d DCA 2001). In addition, plaintiff's reliance on the representation must be reasonable. *Schopler v. Smilovits,* 689 So.2d 1189, 1190 (Fla. 4th DCA 1997)("A critical element of a common law fraud claim is reasonable reliance by the representee").

In *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* the Fourth Circuit disallowed plaintiff's recovery for fraud under circumstances similar to the ones present here. 194 F.3d 505 (4th Cir.1999). Plaintiff in the case, an operator of a supermarket chain, asserted a fraud claim arising out of the undercover investigation of its food handling practices by a television news network program, ABC's Prime Time Live. Like here, two reporters obtained employment with Food Lion by submitting applications with false identities and references, fictitious local addresses, misrepresentations regarding their educational and employment experience, and which failed to mention their current employment with ABC. *Id.* at 510. Plaintiff Food Lion also sought to recover the administrative costs associated with hiring the reporters[5] and the wages it had paid to the reporters. *Id.* at 512. Although it was undisputed that the jobs held by the reporters were ones with high turnover,

Food Lion argued that as a result of the reporters' misrepresentations on their applications, it was forced to incur these costs for two more employees given that the reporters left after one or two weeks. *Id.* at 512–13.

The Court explained that the element of the fraud claim at issue was the one pertaining to injurious reliance on the misrepresentation.[6] *Id.* at 512. It determined that in order to recover, Food Lion had to show (1) that it hired the reporters and incurred the administrative costs incident to their employment because it believed they would work longer than a week or two, and (2) that in forming this belief it reasonably relied on the misrepresentations made by the reporters. *Id.* at 513. The Court found that despite the reporter's misrepresentations concerning matters such as their backgrounds, experience, and other employment, they did not make any representations about how long they would work and Food Lion did not ask for any. *Id.* Because the reporters did not make any representations regarding how long they would work, "Food Lion [was] left to contend that misrepresentations in the employment applications led it to believe the two would work for some extended period of time." *Id.* The Court concluded that because North and South Carolina are at-will employment states, and under this doctrine it is unreasonable for either the employer or employee to rely on any assumptions about the duration of employment, Food Lion "could not reasonably rely on the sort of misrepresentations (about background, experience,

---

**5.** These represented routine costs associated with any new employee, including costs of screening applications, interviewing, completing forms, and entering data into the system. *Id.* at 512.

**6.** Under South Carolina law, the elements to prove fraud are similar and plaintiff must

establish that defendant (1) made a false representation of material fact, (2) knew it was false (or made it with reckless disregard of its truth or finality), (3) intended that the plaintiff rely on it, and (4) the plaintiff must be injured by reasonably relying on the false representation. *Id.* at 512.

etc.) made by the reporters to conclude that they would work for an extended period of time." *Id.* at 513. Thus, Food Lion's claim for administrative costs was inconsistent with the at-will employment doctrine. *Id.* With respect to plaintiff's claim to recover the wages it paid the reporters, the Fourth Circuit concluded that Food Lion paid the reporters because they showed up for work and performed their tasks, not because of misrepresentations on their job applications. *Id.* at 514. Thus, plaintiff could not rely on the wage payments to satisfy the injurious reliance element of the fraud claim. *Id.*

■ Here, Plaintiff Pitts Sales cannot show that the costs it incurred in hiring and paying Yule were proximately caused by its reasonable reliance on the misrepresentations Yule made in getting hired by the company.[7] First, like in *Food Lion*, Yule made no express representation concerning how long he would be associated with the company, as is shown by the transcript of his interview. (*See* Declaration of Sullivan, Exh. 11). The Agreement for Subscription Solicitation Services that Yule signed also did not contain a definite term; rather, it provided only that the agreement would continue until either party gave at least two days' notice, a provision not adhered to or enforced by the company. (*See id.* at Exh. 12 & Exh. C, Pitts deposition, at p. 182). Like in North and South Carolina, under Florida law, "employment contracts without a definite term are generally terminable at will by either party." *Iniguez v. American Hotel Register Co.,* 820 So.2d 953, 955 (Fla. 3d DCA 2002). Moreover, Pitts Sales experi-

ences "very high" turnover among its sales agents, to the extent that some sales agents are hired and fired in the same day. (*See id.,* Exh. C, at p. 41; Exh. A, at p. 31). Pitts Sales made no assumptions about how long a sales agent would remain with the company, as shown by the letters it provided to the sales agents' parents stating that the sales agent "will know if [the sales agent] qualifies for this position." only at the conclusion of the two-week training period. (*See id.* at Exh. 24).

Based on the foregoing evidence, Plaintiff Pitts Sales cannot prove that (1) it hired Yule because it believed Yule would work longer than he did, and (2) reasonably relied on Yule's misrepresentations in forming this belief. In addition, Plaintiff cannot recover the commissions it paid Yule because Plaintiff paid Yule these commissions not because of the misrepresentations Yule made in getting hired, but because Yule submitted orders for which he was due a commission. (*See id.,* Exh. 12). Following *Food Lion's* reasoning, the Court finds that Pitts Sales did not reasonably rely on Yule's misrepresentations to its injury as required to prove a claim for fraud under Florida law. Therefore, the Court finds in favor of Defendants on the fraud claim.

### D. Count V for Trespass

■ Civil trespass to property is use of the land of another by one having no right or authority. *Winselmann v. Reynolds,* 690 So.2d 1325, 1327 (Fla. 3d DCA 1997). To obtain recovery for trespass to real property, the aggrieved party must

---

**7.** At his deposition, Vincent Pitts specifically stated as follows regarding the costs incurred by Pitts Sales under the fraud claim:

> Well, first of all, how we were damaged by it? Well, we were damages by the cost of, you know, he just basically wasted our time. He didn't really want to come to Pitts Sales to sell magazine subscriptions.

> He wanted to just—to get—attain a story for a television program. And in the meantime, he wasted my secretary's time, you know, our ad runner's time, our time, with no intentions of coming there to be a sales person. Time and expense of hiring him. (*See* Sullivan Declaration, Exh. C, at pp. 94–95).

have had an ownership or possessory interest in the property at the time of the trespass. *Id.* Under Florida law, consent is an absolute defense to an action for trespass provided the consent is given by the possessor of land or one competent and authorized to give such consent and provided further that the acts of the party accused of the trespass do not exceed, or are not in conflict with, the purposes for which such consent was given. *Fletcher v. Florida Publishing Company,* 319 So.2d 100, 104 (Fla. 1st DCA 1975), *quashed on other grounds,* 340 So.2d 914 (Fla.1976); *see also Crowell v. Florida Power Corp.,* 438 So.2d 958, 959 (Fla. 2d DCA 1983)(finding that "a genuine issue of material fact exists as to whether FPC exceeded the grant of any implied consent or license."); *Boston Mfrs. Mutual Ins. Co. v. Fornalski,* 234 So.2d 386, 387 (Fla. 4th DCA 1970)("Such implied consent is necessarily limited, however, to those acts that are within a fair and reasonable interpretation of the terms of the grant.").

■ With respect to the trespass claim, the Complaint alleges that the hotel rooms, conference rooms and company vehicles where Yule worked and made the hidden camera recordings were owned and leased by Pitts Sales. Plaintiff further asserts that it did not truly consent to Yule's presence because of the deceptive and fraudulent nature of Yule's conduct. (*See* DE # 1 at ¶ 52). In its summary judgment motion, Plaintiff argues that even though consent is an absolute defense to trespass action, it is vitiated when the party accused of the trespass exceeds the purposes for which the consent was given. To this end, Plaintiff argues that summary judgment is warranted because despite Pitts Sales consent to Yule's use of its hotel rooms, conference rooms, and company vehicles for the purpose of selling magazine subscriptions, Yule exceeded his consent when he secretly recorded the activities of Pitts Sales, its agents and employees while in those rooms and company vehicles. (*See* DE # 63 at p. 13–14).

Defendants maintain that where the subject of newsgathering efforts by the media seeks to hold a media defendant liable under trespass or related tort theories, courts are obligated to construe the cause of action narrowly in order to avoid a conflict with the constitutional principles that protect speech and the press. (*See* DE # 53 at p. 23). To this end, Defendants argue that they did nothing to interfere with Pitts Sales possession or ownership of its property and did not infringe on the kinds of interest the law of trespass is designed to protect. In addition, Defendants argue that the trespass claim is really designed to punish Defendants for airing an uncomplimentary news report rather than for the trespass. To this end, they assert that Plaintiff suffered no real damages, seeking only nominal damages in connection with the trespass claim.

However, Florida courts have allowed the recovery of nominal damages in civil trespass actions. The courts have found that when trespass occurs and no actual damages are proven, the plaintiff is entitled to a judgment for nominal damages and costs. *State v. Sarantopoulos,* 604 So.2d 551, 555 n. 7 (Fla. 2d DCA 1992)(*citing Leonard v. Nat Harrison Associates, Inc.,* 122 So.2d 432 (Fla. 2d DCA 1960); *Stockman v. A.W. Duke,* 578 So.2d 831, 833 (Fla. 2d DCA 1991)); *see also Fletcher,* 319 So.2d at 104 (Fla. 1st DCA 1975).

Moreover, in *Medical Laboratory Mgmt. v. American Broadcasting Companies,* a case cited by Defendants, the district court granted summary judgment on the trespass claim because the publication damages sought by plaintiff were not proximately caused by the trespass. 30 F.Supp.2d 1182, 1204 (9th Cir.1998). In the case, a reporter secretly filmed her visit to the medical laboratory under the

pretext that she wanted to learn more about the industry as she was interested in starting a similar lab in the state. *Id.* at 1185. The court found that though plaintiff consented to the presence of the reporter, he did not consent to the use of concealed cameras used to take pictures of the laboratory's property. *Id.* at 1204. Thus, the court found that defendants' had trespassed, but dismissed the trespass claim because plaintiffs sought publication damages that were not proximately caused by the trespass. *Id.; see also Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies,* 306 F.3d 806, 820 (9th Cir.2002). On appeal, the Ninth Circuit noted that Plaintiff Medical Laboratory "did not claim nominal damages, nor did it claim to have suffered any other damages as a result of the alleged trespass." *Id.* at 820 (9th Cir.2002). Here, Plaintiff seeks nominal damages.

■■■ The Court also notes that in *Food Lion,* the district court allowed the trespass claim to reach the jury. *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 951 F.Supp. 1217, 1221–23 (M.D.N.C.1996). On summary judgment, the court concluded that issues of fact remained as to whether (1) the misrepresentation used by the reporters to gain employment negated any consent given by plaintiff and (2) whether the acts of the reporters exceeded the scope of the consent authorized by plaintiff.[8] The Court held that "[w]hether [the reporters] could actually be considered Food Lion employees acting within the scope of the consent given by Food Lion when they actually were working for ABC is a factual question which will preclude summary judgment on this point." *Food Lion,* 951 F.Supp. at 1224.

The jury in *Food Lion* returned a verdict in favor of plaintiff for nominal dam-

ages, finding that the reporters had trespassed on either of two independent grounds: (1) that Food Lion's consent to their presence as employees was void because it was based on misrepresentations and (2) that Food Lion's consent was vitiated when the reporters breached their duty of loyalty. 194 F.3d 505, 516–17. The Fourth Circuit upheld the jury's verdict on the second of the two grounds. The court held that misrepresentation on a job application alone does not nullify the consent given to an employee to enter the employer's property, thereby turning the employee into a trespasser. *Id.* at 518. However, with respect to the second ground, the court found that the reporters breached their duty of loyalty to serve Food Lion faithfully. *Id* at 519. The court stated that "[a]lthough Food Lion consented to [the reporter's] entry to do her job, she exceeded the consent when she videotaped in non-public areas of the store and worked against the interests of her second employer, Food Lion, in doing so." *Id.* Thus, the court held that the reporters committed trespass because Food Lion's consent was nullified when they tortiously breached their duty of loyalty to Food Lion. *Id.*

In support of their argument, Defendants rely on *Desnick v. American Broadcasting Companies,* which noted that consent to an entry can be given legal effect even though it is obtained by misrepresentation or concealed intentions. 44 F.3d 1345, 1351 (7th Cir.1995). The case was brought by an ophthalmic clinic and two surgeons against a television network for the production and broadcast of a program segment of PrimeTime Live that was highly critical of the clinic. The network had obtained footage for the segment by send-

---

8. Pursuant to North and South Carolina law, consent to enter is canceled out if a wrongful act is done in excess of and in abuse of authorized entry. *Food Lion,* 194 F.3d at 517.

ing test patients equipped with concealed cameras into plaintiff's offices. The court held that there was no invasion of the specific interests that the tort of trespass seeks to protect. "The test patients, wearing concealed cameras, entered offices that were open to everyone expressing a desire for ophthalmic services and videotaped physicians engaged in professional, not personal, communications with strangers (the testers themselves)." *Id.* at 1352.

The district court in *Food Lion* distinguished *Desnick* by finding that the reporters, through their ruse, were allowed to enter parts of the stores not generally open to the public. 951 F.Supp. at 1223. The Court finds this reasoning applicable to the instant case also. Here, unlike in *Desnick*, Defendant Yule was able to access areas of plaintiff's business not open to the public, such as plaintiff's company cars, conference rooms, and its agents' hotel rooms. Additionally, the Court notes that the issue before it is not whether a misrepresentation vitiates consent, but whether the acts of the party accused of the trespass do not exceed, or are not in conflict with, the purposes for which such consent was given.

Based on the above-cited case law, the Court finds that a genuine issue of material fact exists as to the trespass claim that must be resolved at trial. Though Plaintiff Pitts Sales consented to Defendant Yule's entry on its property, the trier of fact must determine whether the acts of Defendant Yule exceed, or are in conflict with, the purposes for which such consent was given, as required under Florida law. *Fletcher*, 319 So.2d at 104; *Crowell*, 438 So.2d at 959; *Boston Mfrs. Mutual Ins. Co.*, 234 So.2d at 387. In addition, unlike in *Medical Laboratory Mgmt. Consultants*, where plaintiffs only sought publication damages, Plaintiff Pitts Sales seeks nominal damages. Therefore, the Court finds that summary judgment is not warranted on the trespass claim.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion For Summary Judgment [DE # 53] and Plaintiff's Motion For Summary Judgment [DE # 63] are **GRANTED IN PART, DENIED IN PART** as follows:

(1) The Court grants summary judgment in favor of Defendants and against Plaintiffs on Counts I for Illegal Interception of Oral Communication, Count II for Use of Illegally Intercepted Communications, and Count IV for fraud.

(2) The Court denies the parties' respective motions for summary judgment on Count V for trespass finding the existence of a genuine issue of material fact to be resolved at trial.